Donald J. ROSS, on his own behalf and on behalf of all others similarly situated, Plaintiff,

v.

E. Theodore GUNARIS, as he is the Deputy Registrar of the Registry of Motor Vehicles of the Commonwealth of Massachusetts, Defendant.

Civ. A. No. 75–362–S.

United States District Court, D. Massachusetts.

June 9, 1975.

---

1. See Cornelius v. Minter, 395 F.Supp. 616 (D.Mass.1974).

James J. Cotter, III, Dorchester, Mass., for plaintiff.

Terence P. O'Malley, Asst. Atty. Gen., Boston, Mass., for defendant.

Before CAMPBELL, Circuit Judge, JULIAN, Senior District Judge, and SKINNER, District Judge.

## OPINION

LEVIN H. CAMPBELL, Circuit Judge.

This is a three-judge district court action challenging the constitutionality of a Massachusetts statute which provides that the Registrar of Motor Vehicles shall suspend the driver's license of a person who has failed to satisfy in full within sixty (60) days a judgment for property damage arising out of the use, occupation or maintenance of a motor vehicle if the person is not insured to the extent of $5,000 for such proper-

ty damage. Mass.G.L. c. 90 § 22A.[1] Plaintiff, on behalf of himself and others similarly situated, seeks injunctive and declaratory relief against the operation of section 22A on the grounds that it denies equal protection of the law to those financially unable to satisfy in full a property damage judgment, and that it deprives licensees of the due process right to travel. U.S.Const. Amend. 14; 28 U.S.C. §§ 1343(3) & 2201–02, 2281, 2284; 42 U.S.C. § 1983.

The parties have stipulated to the basic facts. On December 22, 1967, a default judgment was entered in municipal court against plaintiff for $615.04 for property damage arising from an automobile accident.[2] On October 24, 1968, the judgment creditor filed a copy of the execution of the judgment and an affidavit with the Registrar of Motor Vehicles stating that plaintiff had failed to satisfy the judgment and requesting

---

1. Section 22A provides,

   "The registrar, if he is satisfied by such evidence as he may require that the defendant in an action brought in the commonwealth to recover damages for injury to property arising out of the use, operation or maintenance on the ways of the commonwealth of a motor vehicle or trailer has failed, for sixty days after the rendition thereof, to satisfy in full a judgment against him in such action, shall suspend any license to operate motor vehicles issued to him under this chapter, or his right to operate such vehicles or, if the defendant is a partnership, a trust, or a corporation, shall suspend all certificates of registration issued to it under this chapter; and the registrar shall not terminate any such suspension, or renew or issue any such license to any such person, or renew or issue such certificates of registration to such corporation, partnership or trust until he is satisfied as aforesaid that said judgment has been fully satisfied or that the judgment creditor has released or discharged the judgment debt. This section shall not apply in any case if the registrar is satisfied as aforesaid that the defendant was, at the time such injury occurred, insured against loss or damage on account of his legal liability for such injury by or under a policy of insurance issued by an insurance company duly authorized to transact business in the commonwealth under chapter one hundred and seventy-five, to the

   amount or limit of at least five thousand dollars and that such company, at the time such judgment was rendered, remained liable thereunder; nor shall this section apply in the case of a judgment rendered in an action brought to recover damages for death or bodily injuries as well as damages for such injury to property, unless a separate finding or verdict for such property damages has been entered or returned in such action, in which case the amount of damages so awarded shall, for the purposes of this section, be deemed the amount of the judgment. The registrar shall not impose such suspension if he is satisfied that indemnity against such judgment will be furnished the judgment debtor by a city or town under section one hundred A of chapter forty-one.

   If a judgment debtor satisfied the clerk of the court in which the judgment was obtained that said judgment debtor is unable to locate the judgment creditor or his legal representative, he may deposit with such clerk the full amount of the execution with interest and said clerk shall give to him a receipt therefor reciting such facts. Upon presentation to the registrar, such receipt in full shall be evidence of satisfaction, release, or discharge of the judgment debt."

2. Plaintiff does not here challenge the merits of the state court judgment nor deny that he was afforded an opportunity to defend in that action.

suspension of his license under section 22A. On April 14, 1969, the Registrar suspended plaintiff's license. The Registrar did not take into account plaintiff's financial inability to satisfy the judgment, and plaintiff was not offered the alternative of satisfying the judgment through installment payments. The suspension was mandatory and the Registrar has not lifted the suspension subsequently, because he has received no evidence that the judgment has been satisfied or the debt discharged.

This is not the first challenge to the validity of section 22A. In MacQuarrie v. McLaughlin, 294 F.Supp. 176 (D. Mass.1968), aff'd mem., 394 U.S. 456, 89 S.Ct. 1224, 22 L.Ed.2d 417 (1969), a three-judge court upheld the constitutionality of section 22A, which had been applied to revoke the license of a person against whom a judgment was rendered for the damage caused by a borrower of his car. Although the owner's liability had arisen from lending rather than himself driving the car, the court held that "the revocation of the [owner's] driver's license was related to the legislative purpose of promoting safety on the highways and financial responsibility for injuries done by motor vehicles." Id. at 178. Noting that the state could require the carrying of property damage insurance, the court saw no equal protection violation in a law which in effect permitted those who could not readily afford property damage insurance to have the option of being self-insurers.

Plaintiff asserts that MacQuarrie should now be overruled because of subsequent developments in constitutional law and because recent Massachusetts legislation eliminates the rationale for section 22A's continued operation. We fail to find merit in either argument.

With respect to developments in constitutional law, plaintiff asserts that section 22A establishes a discriminatory classification based on wealth, and that such classifications are now "suspect". Being suspect, the classification is said to be invalid because not shown necessary to meet a compelling state interest. We do not agree with this approach.

First of all, plaintiff's characterization of the statute as providing for the suspension of licenses of only indigent judgment debtors is overdrawn. The ability to satisfy a judgment will vary according to the amount of the judgment as well as the wealth of the defendant. Even an indigent might satisfy a small judgment while a non-indigent who was uninsured might be unable to pay a very sizable one. Moreover, as the court in MacQuarrie observed, section 22A allows the individual the option of being a self-insurer, with an accompanying risk of loss of driver's license if the individual is faced with a judgment he cannot satisfy. There is no de jure wealth classification.

To be sure, section 22A places a sanction on persons not insured for property damage for their failure to satisfy a judgment, and it does not provide for installment payments. The statute can be said to have, as a practical matter, a greater potential impact on the poor than on those who can afford insurance or who through personal assets can satisfy a given judgment in full. But if such an impact—due to the Registrar's obligation to suspend licenses mandatorily without regard for the judgment debtor's ability to pay—were to amount to a classification based on wealth in violation of the equal protection clause, it would follow that unconstitutional discrimination also exists in the case of compulsory insurance laws, license and registration fees, or other measures which operate to restrict driving to those who can afford to pay, yet which have been approved by courts.[3] The poor will inevitably be at a relative dis-

---

3. *See, e.g.*, Bell v. Burson, 402 U.S. 435, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971); In re Opinion of the Justices, 251 Mass. 617, 147 N.E. 680 (1925). In *Bell* the Court stated,

"If the statute barred the issuance of licenses to all motorists who did not carry liability insurance or who did not post security, the statute would not, under our cases, violate the Fourteenth Amendment.

advantage if they must meet the same judgment, payment, or other financial-responsibility obligations as those who can better afford it. Any equal protection test which is based simply on whether the poor are at a relative disadvantage and thus effectively deprived of something is too broad.[4] Such a test, creating a per se rule against de facto wealth classifications, would require Massachusetts to equalize the economic position of the rich and poor in meeting automobile accident judgments.

■ Thus we cannot say that the classification established by the statute is suspect as being wealth-based. Still, the statute might itself have to be judged against a compelling interest standard were the right to a driver's license a "fundamental" interest or value —that is, one guaranteed explicitly or implicitly by the Constitution. If the interest is fundamental, no group, rich or poor, could be effectively deprived of it unless the state had a compelling interest that could be achieved by no less restrictive means than this statute. *See*, *e. g.*, Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). If the interest is not constitutionally protected, the statutory classification need only be reasonably related to a legitimate state purpose—even though the interest affected is an important one, such as in education, housing, or welfare. San Antonio Indep. School Dist. v. Rodriguez, 411 U.S. 1, 29–37, 93 S.Ct. 1278, 36 L.Ed.2d 16; Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). 

■ The possession or continued possession of a driver's license is an important interest that may, for example, be necessary to pursue a job. A license, once issued, thus constitutes a property entitlement which cannot be terminated by the state without procedural due process. *See* Bell v. Burson, 402 U.S. 435, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). But it hardly follows that the interest in a driver's license involves a fundamental interest for purposes of an equal protection claim. There is no explicit guarantee to a driver's license in the Constitution, and the courts' treatment of compulsory automobile insurance laws, *see supra*, seems to indicate that there is no implicit right to a license in the Constitution either.

■ Plaintiff would have us find a fundamental interest in a driver's license because the withholding of it infringes on the right to travel. It is true that the Supreme Court has recognized the right to travel as a fundamental personal liberty. *See, e. g., Dunn, supra*;

---

Ex Parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Continental Baking Co. Woodring, 286 U.S. 352, 52 S.Ct. 595, 76 L.Ed. 1155 (1932); Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927)."

In *Poresky* plaintiff had asserted that chapter 90 of the General Laws of Massachusetts, requiring automobile liability insurance or the posting of bonds as a condition to registration of cars and issuance of license plates, violated the fourteenth amendment. The Supreme Court held this claim to be so clearly without merit in view of previous decisions that the suit could be dismissed by a single judge without calling a three-judge court.

Plaintiff here seeks to distinguish between the granting of a license and the suspension of one provided for by the challenged statute. This distinction may be relevant to the applicability of procedural due process, *see infra*, but it does not detract from the similarity of adverse impact on indigents denied the ability to drive.

4. The Supreme Court has invalidated, on equal protection grounds, state-imposed fees which were found to discriminate by effectively depriving indigents of certain rights. *See, e.g.*, Harper v. Virginia Bd. of Elections, 383 U.S. 663, 668, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); Griffin v. Illinois, 353 U.S. 12, 19, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Since these cases involved rights of fundamental importance—voting and access to the machinery of justice in criminal cases—the cases do not stand for the proposition that classifications adversely affecting indigent groups are always suspect. *See generally* Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065, 1124 (1969).

Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). But we cannot see how section 22A significantly impedes the right to travel or serves to punish the exercise of the right of interstate movement. *See* Edwards v. California, 314 U.S. 160, 62 S. Ct. 164, 86 L.Ed. 119 (1941); Crandall v. Nevada, 73 U.S. (6 Wall.) 35, 18 L.Ed. 744 (1868). Section 22A's sanction limits only one means of transportation—a car operated by the particular individual. The right to travel does not require the state to avoid any regulation of methods of transportation if it would have some minimal effect on interstate travel. We therefore conclude that the statute does not violate the right to travel itself and does not affect a fundamental interest requiring close judicial scrutiny.[5] *But see* Miller v. Malloy, 343 F.Supp. 46, 50 (D.Vt.1972); *but cf.* Christianson v. Campbell, 347 F.Supp. 82, 87–88 (D.Ariz.1972).

▪ As a means to promote automobile safety and to enforce judgments, section 22A is rationally related to the purpose of protecting the public from judgment-free drivers. It keeps such drivers (who admittedly may be liable only vicariously) off the roads, and it provides a heavy encouragement for payment of frequently incurred automobile debts. Plaintiff contends that this rationale is no longer served since the enactment of the Massachusetts compulsory property insurance law, M.G.L. c. 90 § 34(O), which went into effect on January 1, 1972. This statute in effect requires owners of motor vehicles registered in Massachusetts to insure themselves against damage to their vehicles caused by the negligence of other drivers. Owners may thus recover for automobile damage from their own insurer. Section 34(O) substantially diminishes the need to protect the public against automobile damage, but section 22A can still have some effect to protect other drivers from future damage. Section 34(O) is related to the owner's car, while section 22A affects the ability to drive anyone's car (including a car registered out of state) and thus represents a different safeguard. The legislature need not choose one safeguard over the other. Perhaps the safeguard provided by section 22A would be better achieved by a compulsory personal liability insurance law, but section 22A is at least rational.

Section 22A is harsh. The judgment debtor is left at the creditor's mercy, and, absent satisfaction in full within sixty (60) days of judgment, the suspension of license is mandatory and indefinite.[6] Nevertheless, the statute is a valid exercise of the state's police power.

Complaint dismissed.

---

5. We find no support for plaintiff's assertion that close judicial scrutiny is necessary here for the additional reason that section 22A is an exercise of the state's police power.

6. Plaintiff makes no assertion that a discharge in bankruptcy after any such property damage judgment would not relieve the judgment debtor from the sanction of section 22A and thus violate the Supremacy Clause by being in conflict with section 17 of the Bankrupcy Act, 11 U.S.C. § 35. *Compare* Perez v. Campbell, 402 U.S. 637, 1650, 91 S. Ct. 1704, 29 L.Ed.2d 233 (1971), *and* Miller v. Anckaitis, 436 F.2d 115 (3d Cir. 1970), *with* Kesler v. Department of Pub. Safety, 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641 (1962), *and* Reitz v. Mealey, 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21 (1941).

The Court in *Perez*, 402 U.S. at 650–54, 91 S.Ct. 1704, disavowed, in terms of both Supremacy Clause analysis and legislative purpose, the statement in *Kesler*, 369 U.S. at 169, 174, 82 S.Ct. 807, that the Utah financial responsibility statute was "not an Act for the benefit of Mulcted Creditors" and was "not designed to aid collection of debts but to enforce a policy against irresponsible driving". The Court in *Perez* found that the Utah statute, both in effect and purpose, frustrated Congress' policy of giving discharged debtors a fresh start. But the Court in *Perez* in no way intimated that it was an invalid exercise of police power for a legislature to place the club of driver's license suspension in the hands of judgment creditors in automobile cases generally to enforce payments.