**Yvonne POLLARD et al.**

v.

**Robert A. PANORA et al.**

**Civ. A. No. 75–2647–T.**

United States District Court, D. Massachusetts.

March 25, 1976.

with Richard A. Merrill, Asst. Gen. Counsel, FDA).

Robert W. Hagopian, c/o Orion Research Inc., Cambridge, Mass., for plaintiff.

Michael Eby, Asst. Atty. Gen., Boston, Mass., for defendants.

Before McENTEE, Circuit Judge, and FREEDMAN and TAURO, District Judges.

## OPINION

TAURO, District Judge.

This class action[1] was brought under 42 U.S.C. § 1983 seeking declaratory and

---

1. The two named plaintiffs, Yvonne Pollard and Walter C. Mickevich, represent a class of persons comprising, "All those persons whose Massachusetts license to operate a motor vehicle has been, or is about to be, suspended by the defendant Registrar of Motor Vehicles or his predecessors or successors in office upon receipt of a notice by a clerk of a court of Massachusetts that the person has 'defaulted' a court summons, and without affording the person a prior hearing before the Registrar of Motor Vehicles." The motion to certify this class has been assented to by the defendants and is allowed by this court. The factual set-

injunctive relief[2] against the enforcement of Mass.Gen.L. c. 90C, § 4[3] which requires the defendant Registrar to suspend automatically the licenses of persons failing without good cause to appear before a court to answer charges for motor vehicle violations. Plaintiffs contend that the challenged statute abrogates due process in that it requires license suspension without prior opportunity to demonstrate the existence of good cause for failure to appear.

Pursuant to plaintiffs' request, a three-judge court has been convened, 28 U.S.C. § 2284. An agreed statement of facts has been filed and, following hearing, the case was submitted on the merits.

We agree with plaintiffs' position and, for reasons elaborated herein, grant plaintiffs' request for permanent injunction.

## I

### A. *The Pollard Complaint.*

On January 2, 1975, Pollard, a citizen of Massachusetts, was cited by a Boston police officer for "speeding", a motor vehicle violation. The officer swore out a complaint on January 4, 1975. Pollard did not make a written request for a hearing on this violation prior to the issuance of a summons as permitted by Mass.Gen.L. c. 90C, § 1.[4] On February 17, 1975, a summons was issued to Pollard from the Municipal Court of Dorchester with a return date of March 8, 1975. The summons was deposited, properly stamped, into a mail box. Plaintiff did not appear in court on the return date of March 8, 1975. On March 13, 1975 defendant McKenney, in his capacity as clerk of the Municipal Court of Dorchester, notified defendant Panora, the Registrar of Motor Vehicles for the Commonwealth, that the plaintiff had defaulted on the summons issued by the court. On June 25, 1975, Pollard received a notice of suspension of her license from defendant Panora. The notice of the suspension, effective June 27, 1975, instructed plaintiff to surrender her license at once. The reason given for suspension per Mass.Gen.L. c. 90C, § 4 was default of a court summons on March 8, 1975 at the Municipal Court of Dorchester.

Pollard never returned her license to the Registry of Motor Vehicles. On June 27, however, defendant Panora officially suspended Pollard's license to operate a motor vehicle. On the same day the attorney for the plaintiff delivered a letter to defendant Panora or one of his assistants, which attempted, unsuccessfully, to forestall the suspension by explaining that plaintiff had never received notice of the court hearing, thus

---

ting differs for each named plaintiffs' claim and so they will be discussed individually.

The defendants in this case are: Robert A. Panora, Registrar of Motor Vehicles of the Commonwealth of Massachusetts; John C. Craven, clerk of the Boston Municipal Court for the City of Boston for criminal business; and Manuel McKenney, clerk of the Municipal Court of Dorchester.

2. Plaintiffs also seek money damages. This claim is discussed in Part III of this opinion, *infra.*

3. Mass.Gen.L. c. 90C, § 4 states:

If any person summoned to appear before a court for an automobile law violation fails without good cause to appear at the time and place specified on said summons, and has failed to comply with the provisions of section four A, the clerk of court to which said summons was returnable shall immediately notify the registrar who shall suspend any motor vehicle license issued to such person, and such person shall not be eligible for reinstatement of his license until he shall have appeared before said court and answered to the charge made against him.

Although the statute refers to failing to appear "without good cause" it is manifest that, prior to the suspension of licenses, persons suffering suspension are given no opportunity to demonstrate that there was good cause for their absence.

4. Mass.Gen.L. c. 90C § 1 states, in relevant part:

The citation to be given to the offender shall have printed thereon a statement that the person cited therein shall, if he so requests in writing to the appropriate court within twenty-four hours of the alleged violation, be granted a hearing on said violation before any process shall issue . . . .

attempting to establish good cause for her failure to appear. On July 9, 1975, a single judge issued a temporary restraining order enjoining the Registrar from suspending plaintiff's motor vehicle operator's license. But for this order, which is still in effect, plaintiff's license would now be suspended.

### B. *The Mickevich Complaint.*

On April 4, 1975 plaintiff Mickevich was cited for a motor vehicle violation (driving in the wrong direction on a one-way street) by an officer of the Boston Police Department. Mickevich did not make a written request for a hearing prior to the issuance of a summons pursuant to Mass.Gen.L. c. 90C, § 1. On April 14, 1975, a summons was issued to Mickevich from the Boston Municipal Court with a return date of May 29, 1975. This summons was deposited in a mail box on April 15, 1975. Mickevich received this summons, but did not appear in court on the return date. Mickevich alleges that he did not appear because he was sick. He further alleges that he reported the fact of his sickness to the court by phone. On May 29, 1975, defendant Craven, clerk of the Boston Municipal Court for criminal business, informed the defendant Panora, Registrar of Motor Vehicles, that Mickevich had defaulted on the summons issued by the Boston Municipal Court. On or about August 20, 1975, Mickevich received from Panora a notice of suspension of license effective August 26, with an instruction to turn in his license. The reason given for the suspension was default of a court summons. On August 21, Mickevich's attorney, in an unsuccessful attempt to forestall suspension, delivered a letter to Panora, or one of his assistants, explaining that Mickevich's failure to appear was due to illness. On August 26, 1975 defendant Mickevich's operator's license was revoked.

On September 17, 1975, a single judge issued a temporary restraining order enjoining the suspension, which order remains in effect to this day.

Neither Pollard nor Mickevich appealed the license suspensions to the board of appeal on motor vehicle liability policies and bonds as set down in Mass. Gen.L. c. 90, § 28.

### C. *The Statutory Scheme.*

The Commonwealth of Massachusetts processes charges of motor vehicle violation in several stages.

*First,* the police officer gives the putative offender a citation. Mass.Gen.L. c. 90C § 2. This informs the driver of whether the officer will apply for a court complaint. The citation also informs the driver that, upon written request, he may have a court hearing before a summons issues.

*Second,* the court issues the complaint, and notice to appear is given to the driver via a summons, normally mailed to the driver's usual address at least two weeks before the return date.

*Third,* if the driver wishes to change the return date stated on the summons he may do so by appearing in person or through his attorney in the office of the clerk of the appropriate court. If he does not request a change in the return date and does not appear for his hearing, a default is entered on the record and an attested copy of the court abstract is immediately sent to the Registrar, pursuant to Mass.Gen.L. c. 90, § 27.

*Fourth,* upon receipt of the default, the Registrar automatically and immediately suspends the driver's operating license.

*Fifth,* the driver who has his license suspended may appeal the suspension to the board of appeal on motor vehicle liability policies and bonds pursuant to Mass.Gen.L. c. 90, § 28. On appeal, however, the driver may only contest whether or not there was a default, and not whether the default was justified by some good cause. This appeal is subject to judicial review.

A driver may remove his default by (a) appearing at the appropriate court and paying his fine; (b) appearing at the appropriate court and petitioning for the

removal of the default, which the judge after a hearing may order; or (c) appearing at the appropriate court, receiving a new trial date, and appearing at the new trial date. In the latter instance, the default is removed by order of the court after disposition at the second trial date.

*Sixth,* after the removal of the default by the court, the abstract of the court order must be transmitted to the Registry of Motor Vehicles. This can be accomplished in a matter of hours, either by personally handing or mailing the abstract to the driver himself who then takes it to the Registry in order to receive a valid driver's license. Alternatively, the Clerk of the Court may mail the abstract of the court order to the Registry and the Registry will mail the driver a new license or validation of his license. This method takes at least several days.

Neither of the plaintiffs in the present case used any of the procedures outlined above to regain their licenses.

## II

The parties agree that the Commonwealth may not suspend a license without affording the licensee the due process required by the Fourteenth Amendment. *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Raper v. Lucey,* 488 F.2d 748 (1st Cir. 1973). *See also Cicchetti v. Lucey,* 377 F.Supp. 215 (D.Mass.), *rev'd on grounds of mootness,* 514 F.2d 362 (1st Cir. 1975). They divide, however, on the question of what process is "due." Defendants insist that the interests protected here do not require pre-termination hearings and, therefore, that the existing statutory scheme satisfies due process requirements.

Defendants point first to this court's decision in *Almeida v. Lucey,* 372 F.Supp. 109 (D.Mass.), *aff'd,* 419 U.S. 806, 95 S.Ct. 22, 42 L.Ed.2d 36 (1974) as support for their position that pre-suspension hearings are not required. *Almeida* involved a plaintiff who had been charged with driving while under the in-

fluence of alcohol. Under Massachusetts' two-tier system, plaintiff was required initially to try his case jury-waived in the district court. Mass. Gen.L. c. 218, § 26. If convicted, plaintiff had the right to a *de novo* jury trial in the Superior Court. Mass.Gen.L. c. 278, § 18. Conviction in the District Court, however, brought with it a one-year automatic suspension of the driver's license, which could not be stayed by an appeal for a trial *de novo.* Contending that Massachusetts' two-tier system of criminal justice compromised his right to a jury trial, plaintiff stood silent before the district court and, after presentation of evidence by the state, was found guilty. In his subsequent suit in this court plaintiff attacked the constitutionality of the two-tier system claiming that the charge involved required jury trial in the first instance. In addition, plaintiff alleged that taking his license after a non-jury trial, subject as it was to a trial *de novo* appeal, did not afford him due process.

The majority opinion in *Almeida* clearly articulated the issue and its holding:

> The question before us is simply whether the due process clause of the Fourteenth Amendment permits a state to revoke a driver's license after the driver—in a proceeding such as that furnished in the District Court of Western Norfolk—was found to have been driving while under the influence of intoxicating liquor. The answer is plainly yes. Driving under the influence constitutes reasonable cause for revocation of a license. For a determination adequate to support revoking a license, a non-jury district court proceeding provides all the necessary elements of due process.

372 F.Supp. at 111.

The *Alameida* decision can be distinguished from the present case on at least two grounds. *First,* in *Almeida* there clearly was a hearing, albeit jury-waived and subject to appeal *de novo,* prior to the suspension of the license. And the hearing covered the very issue which triggered the possibility of suspension—

driving while intoxicated. Here, the plaintiff's complaint is that one who defaults in a court appearance is given no hearing prior to suspension on the determinative issue of whether his failure to appear was justified. In fact, even *after* the suspension the driver is given no immediate opportunity to explain the failure to appear. *Second,* the *Almeida* case involved what was arguably an administrative procedure taken to protect the lives and safety of Massachusetts citizens from persons who drink and drive. Due process may adjust to the terrible hazard which these people represent. In this case, however, the drivers' loss of license has far less to do with the safety of the highways. As defendants concede—and indeed insist—the suspension of the licenses in this case was purely a *penalty* designed to enforce respect for court summonses.

In deciding this case, therefore, the court must return to the language of the seminal case in this area, *Bell v. Burson, supra.* There, a Georgia statute was challenged which required the suspension of the driver's license of an uninsured motorist involved in an accident, unless he posted security to cover the amount of damages sought by parties claiming injuries from the accident. The provision permitted several exceptions, but did not allow an offer of proof by the driver on the issue of his actual liability—or lack of liability—for the alleged injuries resulting from the accident. The Court disagreed with Georgia's contention that the issue of liability was irrelevant to the matter of the suspension of the license and concluded:

> Since the statutory scheme makes liability an important factor in the State's determination to deprive an individual of his licenses, the State may not, consistently with due process, eliminate consideration of that factor in its prior hearing.

402 U.S. at 541, 91 S.Ct. at 1590, 29 L.Ed.2d at 96.

The Court went on to reject the state's suggestion that the provision of a hear-

ing on the issue of liability *after* the suspension would satisfy due process.

> While "[m]any controversies have raged about . . . the Due Process Clause," [citing *Mullane v. Central Hanover Trust,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)] it is fundamental that except in emergency situations (and this is not one) due process requires that when a State seeks to terminate an interest such as that here involved, it must afford "notice and opportunity for hearing appropriate to the nature of the case" *before* the termination becomes effective.

*Id.* 402 U.S. at 542, 91 S.Ct. at 1591, 29 L.Ed.2d at 96 (citations and footnote omitted) (emphasis in original).

*Bell v. Burson* has been applied in a fact situation very similar to the present case. *Warner v. Trombetta,* 348 F.Supp. 1068 (M.D.Pa.), *aff'd,* 410 U.S. 919, 93 S.Ct. 1392, 35 L.Ed.2d 583 (1973), upheld a challenge to a Pennsylvania statute which required the state Secretary of Transportation, upon proof of a conviction for leaving the scene of an accident, to revoke automatically the offending motorist's operating license for one year. The Pennsylvania authorities in that case argued that granting the motorist a second hearing on the issue of suspension, after his conviction for leaving the scene, would be unnecessary since it "would serve no valid purpose other than requiring the Commonwealth [of Pennsylvania] to prove that his conviction record was properly made, a ministerial act which should not be necessary." 348 F.Supp. at 1071.

The *Warner* court rejected this argument:

> The fatal defect in the statute at bar is that there is no provision made for any type of administrative hearing with notice and an opportunity to be heard before the revocation action becomes effective. Hence, the possibility exists that error in a conviction record could result in the revocation of the license of an innocent motorist. Under these circumstances, we conclude

that the essentials of due process require the opportunity for some sort of meaningful administrative hearing prior to the revocation of an operator's license.

*Id.,* at 1071.

The facts here argue even more strongly for the necessity of a hearing prior to suspension. The critical issue for the plaintiffs here facing suspension of their licenses is their alleged failure without good cause to appear in court, a threshold issue analogous in kind to the liability issue determined by *Bell.* Pollard insists she never received notice of the hearing; Mickevich that he was too ill to appear. Both allege considerable effort to explain their plight prior to suspension in order to head off its imposition. But no avenue for doing so was open to them. Even in the best of times, a postal system does not work perfectly. And human beings are subject to illness. Thus, under the present system it is absolutely inevitable that a fairly substantial number of persons similarly situated to the named plaintiffs will, through no fault of their own, lose the right to operate a motor vehicle, to their great inconvenience.[5] These factors are in addition to the possibility of clerical miscommunication persuasive in itself to the court in *Warner.* This court has already recognized that such clerical error is a distinct possibility in this state, *Cicchetti v. Lucey, supra.*

The defendants argue that the substantive hearing, at which plaintiffs both failed to appear, and the consequent finding of a default constitute a "judicial proceeding" permitting suspension. This argument collapses in the face of *Bell.* There, as here, while a substantive judicial hearing was held, it never touched upon, and was not designed to decide, the issue which eventually led to the suspension—liability in *Bell,* and failure to appear without good cause here. To analogize to the criminal process, the

failure to appear is the putative "offense." Before the imposition of a penalty the alleged offender is entitled to a hearing.

The defendants offer in support of their contrary theory an analogy with Rule 55 Fed.R.Civ.P., which permits entrance of a default by the court when a civil defendant fails to proceed after the commencement of the suit. Rule 55 does not contemplate, however, the imposition of any sanction, other than default in the suit itself. No damages are awarded, no fine imposed. Clearly, if a civil defendant refuses to answer to a civil complaint the remedy is the entrance of a default against him. His options then are application for removal, upon the showing of good cause, Fed.R.Civ.P. 55(c), or appearance at a subsequent hearing for assessment of damages, Fed. R.Civ.P. 55(b). The case at hand, however, is more analogous to willful disobedience of a court order, an act of criminal contempt. 18 U.S.C. §§ 401 and 402. For this, of course, a defendant is generally entitled to a hearing with full due process rights before the imposition of sanctions. 18 U.S.C. § 3691.

Defendants argue that, even if the due process given prior to suspension is found insufficient, the remedies provided *after* suspension satisfy due process. They insist, moreover, that an overview of the total procedure used by the Commonwealth authorities in processing motor vehicle violations will vindicate the challenged statute.

*First,* the defendants note that neither plaintiff requested a hearing prior to the issuance of a summons, as permitted by Mass.Gen.L. c. 90C, § 1. This provision, however, is aimed at permitting the accused to challenge the basis of the substantive offense—here, speeding and driving the wrong way on a one-way street. Neither plaintiff, however, contests the validity of the substantive charge. They object to their loss of

---

**5.** Plaintiff Pollard is the mother of seven children, lives in addition with two grandchildren and depends on her automobile for transportation. Her sole source of income is $269 per month from the Aid for Families with Dependent Children Program. Plaintiff Mickevich is a school teacher who resides in Randolph. He is employed as a school teacher at Marlboro High School and must use his car daily to commute from his home to his place of employment.

license for failure to appear, a sanction which may not even have been imposed by the Registrar had they been found guilty of the substantive offenses as charged.

*Second,* defendants point out that plaintiffs could have requested a change in the return date. The provision for changing the return date was hardly available to Pollard, who claims she never received the summons and so was never informed of the return date in the first place. The opportunity is of scarcely more help to plaintiff Mickevich who claims he was unable to go to court, or to appear in person to change his return date, due to his illness.

*Third,* defendants' reliance on the opportunities for appeal immediately after the suspension is misplaced. An appeal may be taken to the board of appeal on motor vehicle liability policies and bonds pursuant to Mass.Gen.L. c. 90, § 28 and it is true this appeal is subject to judicial review. Mass.Gen.L. c. 30A, § 14. But this procedure does not afford the named plaintiffs an opportunity to be heard regarding the justification for their defaults, since the only issue which can be raised on appeal is the accuracy of the clerk's communication that there has, in fact, been a failure to appear. Moreover, the motorist is not given, at judicial review, an opportunity to explain the failure to appear. The inquiry on review stops at the fact of his absence. Finally, there is no provision for staying the suspension of the license pending either appeal or subsequent judicial review.

It is true that additional remedies exist after suspension. The motorist may remove the default by appearing personally at the clerk's office and paying his fine. Alternatively, if he disputes the conviction, he may appear and request a new trial date and either petition for an immediate hearing to remove the default or wait for the removal of the default upon the ultimate disposition of the sub-

stantive charge. Removing the default, however, is only the first step towards regaining the license. The motorist must then secure an abstract of the court order removing the default, either in person or through the mail, or he must wait while the clerk of the court mails the abstract to the Registrar. Upon receipt of the abstract the Registrar will then reinstate the license. If the motorist has surrendered his license upon the earlier demand—as neither of the present plaintiffs did—he must then go to the Registry and obtain his valid license. Presumably, where the actual license is not surrendered, the license must be in some way re-validated in the records of the Registry. In any event the recovery of valid driving privileges via these post-suspension processes is cumbersome and time-consuming. In the meantime, jobs and other commitments may be in jeopardy.

This court is not prepared to speculate as to whether, in all cases of license suspension, a hearing on the issue triggering the loss of license must always be given *prior* to the suspension.[6] If the defendants established a process which allowed the motorist deprived of his license by mistake or without fault to recover it by some expeditious and simple process immediately after the suspension, the issue of the necessity of a prior hearing would be presented in its pure form. In the event of such a presentation, this court would certainly be required to take into consideration the close similarity of the issue of liability in the *Bell* case to the issue of default without good cause in this case. For now, however, this court finds that due process is satisfied by neither the pre-nor post-suspension procedures available.

The interests of the state in the present procedures certainly do not, as the defendants suggest, outweigh the inconvenience to the plaintiff class. The state interest at issue in this case is the prompt response to a court summons,

---

6. In a recent opinion dealing with Social Security disability benefits the Supreme Court has re-affirmed the validity of the *Bell* decision on its facts, while casting doubt on the prior hearing as an inevitable requirement of due process. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, 44 U.S.L.W. 4224 (U.S. February 24, 1976).

and not highway safety. Initially, it ought to be noted that the dignity of a court is hardly threatened by an individual who unintentionally, and due to circumstances beyond his control, is unable to respond to a summons. As the criminal statutes recognize, there is no offense to the court until it has been established that the individual has failed to respond "willfully," 18 U.S.C. § 402, or "without reasonable cause," Mass. Gen.L. c. 276, § 26. Beyond this, the court has at its disposal an extremely effective remedy which can be used against persons who flout summonses. They can be arrested. The state argues that arrest is a much more intrusive remedy than the loss of license. That may or may not be so, depending on the circumstances of the individual involved. At least arrest results in an immediate hearing. The point is that this court's decision today does not in any way strip the state of its ability to defend the dignity of its courts.

Further, today's decision emphatically does not have the result that "a violator could avoid a hearing in court on his default yet never lose his license." Defendants' Brief at 19. A hearing on the default is precisely what this court is attempting to insure.[7] Indeed, the defendants have a simple and effective way of insuring it: the present notice of suspension might be amended to provide notification of a time and place where the defendant will have an opportunity to show cause as to why his license should not be suspended on a given date

for his failure to have appeared at a prior court hearing. This would not even require an increase in postage. Of course, it is not the responsibility of this court to suggest any one among several methods by which the state may satisfy due process. As the Court of Appeals has said, however, ". . . if the state can accomplish its purpose just as well by observing some measure of due process as by not observing it, it should tread the former path." *Palmigiano v. Baxter*, 487 F.2d 1280, 1287 (1st Cir. 1973), quoted in *Cicchetti v. Lucey, supra,* at 217. The burden on the state which this decision imposes is negligible compared to the weight it takes off the shoulders of the motorist who innocently fails to respond to a court summons.[8]

Finally, the defendants argue that consideration of the present suit is barred on grounds of comity and federalism, citing *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) and *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). These decisions bar federal interference in pending state criminal or, in some cases, civil proceedings. The flaw in defendant's argument is that there are no pending state court proceedings, either civil or criminal, which this court's decision might undermine. Our decision does not interfere in any way with the ability of the courts of the Commonwealth to impose sanctions on persons either for substantive motor vehicle violations, or for failing to appear in court to face these charges. This decision con-

---

7. Defendants seem to suggest that if this court permitted motorists facing suspension a hearing on the issue of their failure to appear, at which they failed to appear, then the court would be bound by its own logic to require another hearing on the issue of failure to appear at the second scheduled hearing, and so on, as long as the defendant failed to appear, indefinitely. This attempt to reduce plaintiffs' claims to absurdity might with equal cleverness be directed at the requirement of any hearing at any level. Obviously, once a party has been given an opportunity to explain his prior failure to appear the state has carried its burden. This decision gives the innocent defaulter one day in court—which he is denied now—not an infinite number of days. Of

course, the state has the alternative at any stage after the initial failure to appear of arresting the offender.

8. In *Mathews v. Eldridge, supra* note 6, the Supreme Court specified the factors to be considered in identifying the dictates of due process in a given situation: the private interest that will be affected; the risk of erroneous deprivation of such interest and the probable effectiveness of procedural safeguards; and "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33, 44 U.S.L.W. at 4229.

cerns itself merely with an administrative action—the suspension of a license without prior, or effective and immediate subsequent, hearing on the facts which allegedly justify the suspension. Plaintiffs' licenses were not suspended by any order of the court, but merely by the communication of a default from the court to the registry. The challenge here is to a statutory administrative procedure, and not to any judicial proceedings. *Huffman v. Pursue, supra*, and *Younger v. Harris, supra*, are therefore inapplicable.

▮ In conclusion, then, we hold that the present Massachusetts procedure which suspends an individual's driver's license upon the mere communication of the party's failure to appear to face motor vehicle charges, without affording him an opportunity to be heard on the facts underlying his default, either prior to the suspension or via some simple, quick and immediate procedure subsequent to the suspension, violates due process of law and is unconstitutional. This court therefore grants plaintiffs' prayer for a permanent injunction barring the defendants from enforcing Mass.Gen.L. c. 90C, § 4 and barring the defendants from suspending plaintiffs' licenses until they have afforded them the due process outlined in this opinion.

### III

▮ In addition to the declaratory and injunctive relief sought by plaintiffs in this case, they seek punitive monetary damages against the named defendants. Plaintiffs concede that, ordinarily, defendants would be immune from monetary liability absent subjective malice since they were acting in their official capacities. Plaintiffs, however, cite the exception recently established by the Supreme Court in *Wood v. Strickland*, 420

U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). There the Court said:

> The official himself must be acting sincerely and with a belief that he is doing right, but an act violating a student's constitutional rights can be no more justified by ignorance or disregard of settled, indisputable law on the part of one entrusted with supervision of students' daily lives than by the presence of actual malice. To be entitled to a special exemption from the categorical remedial language of § 1983 . . . [the defendant] must be held to a standard of conduct based not only on permissible intentions, but also on knowledge of the basic, unquestioned constitutional rights of his charges.

*Id.* at 321–322, 95 S.Ct. at 1000, 43 L.Ed.2d at 225.

The plaintiffs argue that, given *Bell v. Burson, supra*, and especially given the decision in *Cicchetti v. Lucey, supra*, the Registrar's continued suspension of driver's licenses without effective opportunity to be heard was a violation of "basic, unquestioned constitutional rights." But, the Court of Appeals in its reversal of *Cicchetti* for mootness did not categorically state that, absent mootness, it would find defendants' conduct violative of constitutional rights.

Under all the circumstances herein involved, and bearing in mind the shifting pattern of the law in this area, this court holds that the defendants were justified in continuing to enforce the provisions of a statute duly passed by the Legislature. Defendants' only alternative to enforcing the statute would have been resignation. Neither the severity nor the obviousness of the offense to constitutional rights was so great that such a step was required.[9]

Judgment will be entered for the plaintiffs. An order will issue.

---

**9.** The plaintiff in his brief asserts that the defendant Registrar has acted in subjective bad faith by "sabotaging" the class action in *Cicchetti* through false representations to the Court of Appeals that the named plaintiff in that case had refused the offer of the Registrar to return his license. This allegation is, however, disputed by the defendants and is unsupported by any affidavits or other evidence admissible for purposes of a ruling on the instant motion.