Doerfer, J.
Plaintiff Eric T. Young (“Young”) appeals, pursuant to G.L.c. 30A, §14, a decision of the Board of Appeal on Motor Vehicle Policies and Bonds (“Board”), which affirmed the revocation of his Massachusetts license to operate a motor vehicle by the Registrar of Motor Vehicles (“Registrar”), pursuant to G.L.c. 90, §22(c). Both parties have now moved for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c). For the following reasons, the Board’s decision must be affirmed.
BACKGROUND
On February 16, 1989, a default judgment entered against Young in the Circuit Court of Cook County, Illinois, Case #88M1 301130, for $14,951.67, for damages arising out of an automobile accident in which Young was allegedly involved. Administrative Record (Record) at 13. Young did not satisfy the judgment, and as a result, on December 27, 1991, a notice was sent to Young informing him that his “privilege to operate a motor vehicle” and “of having a motor vehicle owned by [him] operated by anyone” were thereafter suspended within the State of Illinois, pursuant to Ill. Rev. Stat. c. 95 1/2, paras. 7-303 and 7-308.[1] Record at 9. Young claims that he did not receive notice of the scheduled court appearance in the Illinois Circuit Court at which default judgment was entered until December 1991, when he received the notice of suspension from the Illinois secretary of state.
On December 18, 1991, the Massachusetts Registrar sent notice to Young that his “license/privilege to operate a motor vehicle in the State of Massachusetts” was to be revoked effective in thirty days, pursuant to G.L.c. 90, §22(c), “because of the official notice of suspension/revocation” received from an Illinois court *582 for “NDR UNSATISFY JUDGE” (an unsatisfied judgment).[2] Record at 2. G.L.c. 90, §22(c) provides:
If the registrar receives official notice . . . that a resident of the commonwealth, or any person licensed to operate a motor vehicle under the provisions of chapter ninety,... has had a license or right to operate suspended or revoked in another state or country, . . . the registrar shall immediately revoke said license, without a prior hearing.
On July 9, 1992, Young filed an appeal of the Registrar’s revocation decision with the Board, pursuant to G.L.c. 90, §28. A hearing was held on August 19, 1992. The Board issued a “Finding and Order” against Young on that date, which stated simply that “after due consideration the Board voted to affirm the decision of the Registrar of Motor Vehicles.” Record at 5. In its “Statement of Reasons for Decision" issued on October 1,1992, the Board stated that in affirming the Registrar’s revocation, the Board took into account Young’s arguments that he had not been afforded proper procedure in Illinois, and had not been afforded a hearing by the Registrar.
On September 21, 1992, Young filed this appeal pursuant to G.L.c. 30A. Both parties have now cross-moved for judgment on the pleadings.
DISCUSSION
On appeal, Young asserts that G.L.c. 90, §22(c): (1) violates the procedural due process requirements of the United States and Massachusetts Constitutions by not providing for a hearing either prior to or after revocation of a driver’s license; and (2) violates on its face the equal protection and substantive due process requirements of the United States and Massachusetts Constitutions by providing automatic revocation based on another state’s decision to suspend or revoke a license or privilege to drive. These assertions raise questions of first impression.
Substantive Due Process[3]
Young’s substantive due process argument is based on the assertion that G.L.c. 90, §22(c), impermissibly incorporates into the laws of Massachusetts the laws of all the fifty states, allowing for the possibility that a foreign jurisdiction may create legislation, enforceable in Massachusetts, that bears no rational relationship to any legitimate police power purpose.[4]
Under the due process clause of the Fourteenth Amendment to the United States Constitution, a statute will satisfy due process if it “bears a reasonable relation to a permissible legislative objective . . . Under Part II, c. 1, §1, art. 4, of the Massachusetts Constitution and arts. 1, 10, and 12 of the Declaration of Rights, a statute will satisfy due process if it ‘bears a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare.’ ”
Rushworth v. Registrar of Motor Vehicles, 413 Mass. 265, 268-69 (1992) (citations omitted).
G.L.c. 90, §22(c), is, in effect, a legislative determination that out-of-state license revocations are a sufficient basis on which to rely in determining that a driver poses a threat on the highways of Massachusetts. See, e.g., Dean v. Iowa Dep’t of Transp., 415 N.W.2d 649, 650 (Iowa App. 1987) (drivers who disregard traffic laws in other states presumably will do so in home state as well, and therefore pose a danger to the public safety). It is undisputed that it is within the police power of a state to revoke driving privileges to protect the safety and welfare of the public. Mackey v. Montrym, 443 U.S. 1, 17 (1979); Ross v. Gunaris, 395 F.Supp. 623, 628 (D.Mass. 1975). In determining whether a statute serves such a legitimate purpose in a rational way, courts will not substitute their own judgment for that of the legislature. Rushworth v. Registrar of Motor Vehicles, 413 Mass. 265, 270 (1992).
There is no merit to Young’s assertion that G.L.c. 90, §22(c), does not provide a mechanism to ensure that the out-of-state statute underlying the revocation is unconstitutional. Under G.L.c. 90, §28, an appeal to the Board is provided in which the Board may look behind the sister state’s revocation decision to examine the constitutionality of that state’s law. Registrar of Motor Vehicles v. Board of Appeal on Motor Vehicle Liability Policies and Bonds, 382 Mass. 580, 584 (1981) (under G.L.c. 90, §28, “at a minimum any issue is open which is essential to a determination that the license revocation is constitutionally valid”); Boyle v. Registrar of Motor Vehicles, 368 Mass. 141, 143(1975). The Board’s decision to affirm the Registrar’s decision to revoke is an implicit determination that Illinois has complied with procedural and substantive due process requirements. Although Young does not press the argument that the Illinois statute in this particular case is unconstitutional, the Court notes that such statutes (sometimes called “financial responsibility” statutes), providing for the revocation of a license for unsatisfied judgments in civil cases involving automobile accidents, have generally been held constitutional as rationally related to the state’s legitimate purpose of ensuring highway safety. Opinion of the Justices, 251 Mass. 617 (1925) (declaring constitutional a pending bill that would “deprive a judgment debtor of license to operate motor vehicles until any judgment against him in a cause of action for death or damages caused by the operation of a motor vehicle has been satisfied”); Ross v. Gunaris, 395 F.Supp. 623, 628 (D.Mass. 1975) (discussing a similar statute, G.L.c. 90, §22A).
Young’s contention that he did not receive notice of the Illinois hearing is not a constitutional challenge to the Illinois statute. People v. LaGana, 381 N.Y.S.2d 742, 744, 85 Misc.2d 1039 (1976) (while “the giving of notice may be an essential element of due process, its actual receipt is not, if the method of giving notice is reasonably calculated to be effective”) (emphasis in original). Young must therefore make this challenge in Illinois. See Haran v. Board of Registration in Medicine, *583 398 Mass. 571, 577 (1986); Annot., 87 A.L.R.2d 1019, §13 (1963 & Later Case Service 1991 & Supp. 1993), and cases cited (discussing collateral attack on underlying conviction in license revocation hearings); Earp v. Fletcher, 359 S.E.2d 456, 457 (Ga. App. 1987) (collateral attack on an underlying conviction used to support a license suspension may not be made in a de novo appeal unless the conviction is void on its face).
Statutes, like G.L.c. 90, §22(c), based on principles of reciprocity, have long been recognized as constitutional. For example, “habitual offender” statutes, in which an individual’s license may be revoked upon accumulation of a certain number of traffic violations, have traditionally counted out-of-state violations toward the total.[5] State v. Malone, 9 Wash.App. 122 (1973); McIntosh v. Commonwealth, 213 Va. 330 (1972); State v. Nichols, 264 N.W.2d 765 (Iowa 1978); Welch v. Alabama Dep't of Pub. Safety, 519 So.2d 517 (Ala. 1987). The Interstate Driver License Compact, Pub. Law 85-684 (1958), provides congressional consent “to any two or more of the several States to enter into agreements or compacts — (1) for cooperative effort and mutual assistance in the establishment and carrying out of traffic safety programs, including . . . the enactment of uniform traffic laws, . . . [and] coordination of traffic law enforcement . . .” See also Welch v. Alabama Dep’t of Pub. Safety, 519 So.2d 517 (Ala. 1987) (Driver License Compact, with its strong reciprocity policy, has been adopted by at least thirty states). In Massachusetts, a physician may have his license to practice within the commonwealth suspended or revoked based on license revocation in another state. 243 C.M.R. §1.03(5){a)(12); Horan v. Board of Registration in Medicine, 398 Mass. 571, 577 (1986).
Equal Protection[6]
Like his substantive due process argument, Young’s equal protection is also based on the assertion that G.L.c. 90, §22(c), impermissibly incorporates into the laws of Massachusetts the laws of all the fifty states. In this case, a situation might be created where, for example, a licensed Massachusetts driver committing certain acts within Massachusetts would not have his license revoked, while a licensed Massachusetts driver committing the same acts outside of Massachusetts, in a jurisdiction which punished such acts with revocation, would also have his Massachusetts license revoked.
The parties do not dispute that no fundamental right is implicated for purposes of equal protection, Rushworth v. Registrar of Motor Vehicles, 413 Mass. 265, 269 n.8 (1992), citing Raper v. Lucey, 488 F.2d 748, 751 (1st Cir. 1973), nor does the case at bar involve a suspect class. Therefore, the unequal treatment must only be rationally related to a legitimate state end. Id., citing Marshfield Family Skateland, Inc. v. Marshfield, 389 Mass. 436, 445 (1983).
As discussed above, it is true that most reciprocity statutes contain language to the effect that out-of-state sanctions will be recognized only to the extent that the reasons behind the sanction are substantially similar to reasons which would be grounds for sanction in the home state.[7] See Annot., 87 A.L.R.2d 1019, §8 (1963 & Later Case Service 1991 & Supp. 1993); G.L.c 90, §30B. Because such statutes almost universally contain such language, the issue of whether the absence of such language violates equal protection has rarely arisen. This court holds that the absence of “substantial conformity” language in G.L.c. 90, §22(c), is not fatal to its validity.[8] See Smith v. Wilkins, 75 N.C.App. 483, 486 (1985) (“[a] person with a revoked license from another jurisdiction is not similarly situated with a person residing in North Carolina with a revoked North Carolina license”). The legitimate state end discussed above, of making Massachusetts highways safe for its citizens, is served by the revocation of licenses both for reasons explicitly enumerated in Massachusetts statutes, as well as for additional reasons that may not be exactly the same as Massachusetts’ own criteria, that have been adopted by other states. The commonwealth is entitled to presume that a sister state’s revocation is based on a reason that relates to the health, welfare and safety of its citizens. Any resulting difference in treatment between the two groups is rationally related to a legitimate state end.
Procedural Due Process
“[I]t is fundamental that except in emergency situations . . . due process requires that when a State seeks to terminate an interest such as [suspension of a driver’s license], it must afford ‘notice and opportunity for hearing appropriate to the nature of the case’ before the termination becomes effective.” Bell v. Burson, 402 U.S. 535, 542 (1971) (emphasis in original); accord Pollard v. Panora, 411 F.Supp. 580, 585 (D.Mass. 1976). G.L.c. 90, §22(c) on its face provides for revocation by the registrar “without a prior hearing.” Thus, the sole question before the court is whether the circumstances of a revocation under G.L.c. 90, §22(c), are of an emergency nature.
This question has been answered on innumerable occasions with respect to a large variety of drivers’ license revocation statutes. However, the question is particularly tricky to answer with respect to G.L.c. 90, §22(c), because no distinction is made between the different reasons that potentially underlie the out-of-state revocation. In other words, under G.L.c. 90, §22(c), the Registrar could summarily revoke a license where, as here, the underlying reason for the out-of-state revocation is failure to pay a judgment in a civil suit involving an automobile accident, or the registrar could revoke a driver’s license where the underlying reason for the out-of-state revocation is a conviction for operating under the influence (OUI). In these two instances alone, the question whether a prerevocation *584 hearing is required might compel opposite conclusions. Compare cases cited in Annot., 60A.L.R.3d361, §4 (1974 & Supp. 1993) (hearing generally required prior to suspension for violation of financial responsibility statutes), to cases cited in Annot., 60 A.L.R.3d 361, §7 (hearing generally not required prior to suspension for conviction under motor vehicle offenses such as drunk driving). Other potential underlying reasons for the out-of-state revocation are virtually infinite.[9]
The Court concludes that where, as here, it is unclear before the hearing whether the underlying revocation is of an emergency nature, then a pre-revocation hearing is required. It is necessary to err in favor of the licensee in such a case. Applying the balancing test set forth in Mathews v. Eldridge, 424 U.S. 319, 335 (1976), the risk of erroneous deprivation, where the out-of-state revocation could have been the result of any number of types of infractions, is greater than the state’s interest in summarily removing potentially dangerous drivers from the road, particularly when it cannot be ascertained before the hearing whether the driver is especially dangerous, or simply has not been “financially responsible.” See Fitzpatrick v. Pare 568 A.2d 1012 (R.I. 1990) (also noting that in such a case, postsuspension hearing does not take the place of a presuspension hearing).
The Court notes that the Registrar implicitly acknowledges that revocations under G.L.c. 90, §22(c), are not considered emergencies, since it already provides the licensee a 30-day window in which to establish that his out-of-state privileges have been reinstated. It would be of little difficulty, then, if during that 30-day window, the Registrar were also to provide the licensee with a meaningful hearing that satisfies the requirements of due process. Pollard v. Panora, 411 F.Supp. 580, 588 (D.Mass. 1976) (“if the state can accomplish its purpose just as well by observing some measure of due process as by not observing it, it should tread the former path”).
Remedy
The final question with which this court is faced is what remedy must be afforded to Young. Although the Court has now established that Young should have had the opportunity to have a prerevocation hearing, it is true that he has now had the opportunity to raise, postrevocation, all of the issues that he could have raised earlier. Because G.L.c. 90, §22(c) is unconstitutional only insofar as it provides no prerevocation hearing, there is no doubt that the revocation of Young’s license is otherwise valid.
ORDER
For the foregoing reasons, the plaintiffs Motion for Judgment on the Pleadings is hereby partially ALLOWED, only to the extent that it raises issues of procedural due process. It is therefore further ORDERED, that judgment enter to the effect that G.L.c. 90, §22(c), violates the procedural due process requirements of the United States and Massachusetts Constitutions, insofar as it does not provide for a hearing prior to suspension and/or revocation of a license to operate a motor vehicle and/or driving privileges within the Commonwealth of Massachusetts.
It is further ORDERED that in all respects other than on grounds of procedural due process, the plaintiffs Motion for Judgment on the Pleadings is hereby DENIED, and the defendant’s Cross-Motion for Judgment on the Pleadings is hereby ALLOWED. The decision of the Board of Appeal on Motor Vehicle Policies and Bonds is therefore AFFIRMED.

 That statute provides, in relevant part, that where there is an unsatisfied judgment “for damages on account of bodily injury to or death of any person or damages to property resulting from the operation ... of any motor vehicle,” Ill. Rev. Stat. c. 95 1/2, para. 7-303, a “nonresident shall not operate any motor vehicle in [Illinois], nor shall any motor vehicle owned by such nonresident be operated in [Illinois] by any person.” Ill. Rev. Stat. c. 95 1 /2, para. 7-308.

 While there is no explanation for why the Massachusetts notice is dated nine days before the notice of the Illinois suspension was sent out, this fact is immaterial to the issues before the Court.

 In general, Massachusetts courts have held that “the due process provisions of the Massachusetts Constitution . . . afford protection comparable to that supplied by the Fourteenth Amendment [to the United States Constitution]." Rushworth v. Registrar of Motor Vehicles, 413 Mass. 265, 270 (1992), quoting Boston v. Keene Corp., 406 Mass. 301, 308 n.8 (1989). For purposes of the instant analysis, this Court treats the two provisions as equivalent.

 The plaintiff has provided no reason based on general principles of sovereignty and federalism, nor has the Court discovered any reason, why the Massachusetts legislature may not draft such a law.

 Plaintiff correctly points out that these statutes generally allow reciprocity only where the out-of-state statute is in substantial conformity with an in-state statute (but see State v. Malone, supra). The absence of such language, as plaintiff asserts, may raise equal protection issues, but does not affect a substantive due process analysis.

 “For the purpose of equal protection analysis, our standard of review under . . . the Massachusetts Declaration of Rights is the same as under the Fourteenth Amendment to the Federal Constitution.” Rushworth v. Registrar of Motor Vehicles, 413 Mass. 265, 272 (1992), quoting Dickerson v. Attorney Gen., 396 Mass. 740, 743 (1986). Again, for purposes of the instant analysis, this Court treats the two provisions as equivalent.

 Although it need not reach the issue, the Court notes that the Illinois statute involved here does seem to be in substantial conformity with G.L.c. 90, §22A.

 One analogous statute, a Washington habitual offender statute, allowed for revocation of a driver’s license based on violations that included violations “of any local, state, or federal law, or the laws of a sister state,” without regard to the reasons behind the out-of-state convictions. State v. Malone, 511 P.2d 67, 70 (Wash. App. 1973). There the court held that the statute was not unconstitutional for overbreadth or vagueness.

 See cases cited in Annot., 60 AL.R.3d 361, §§4-8 (1974 & Supp. 1993) (e.g., refusal to take breathalyzer test; violation of habitual offender statute; physical disabilities; failure to appear at hearing; failure to pay parking tickets, etc.).