**SUNKEN TREASURE, INC., Plaintiff**
**GOVERNMENT OF THE VIRGIN ISLANDS, DEPARTMENT OF**
**PLANNING & NATURAL RESOURCES, Plaintiff/Cross Claimant**
**v.**

**THE UNIDENTIFIED, WRECKED, AND ABANDONED VESSEL,**
her tackle, armament, apparel, and cargo, located within 2,500
yards of a point located at coordinates 17 degrees, 47 minutes,
50 seconds North Latitude; and 64 degrees, 45 minutes,
30 seconds West Longitude, and **UNITED STATES OF**
**AMERICA, Defendants**

Civil No. 1991/263

District Court of the Virgin Islands

Div. of St. Croix

July 14, 1994

274

275

MAURICE CUSICK, ESQ., (LAW OFFICES OF LEE ROHN), Christiansted, St. Croix, V.I., *for plaintiff Sunken Treasure, Inc.*

ROSALIE SIMMONDS BALLENTINE, ATTORNEY GENERAL, and DUDLEY HUGHES, Asst. Attorney General, Christiansted, St. Croix, V.I., *for plaintiff/cross claimant Government of the Virgin Islands*

HUGH P. MABE, III, United States Attorney, By: Michael A. Humphreys, Asst. United States Attorney, Christiansted, St. Croix, V.I., *for United States of America*

BROTMAN, *District Judge*

## OPINION

This matter is before the Court on the Government of the Virgin Islands' Motion to Dismiss Plaintiff's Complaint in rem against the defendant vessel and, concomitantly, on the United States' Motion to Dismiss or for Summary Judgment. For reasons addressed below, the respective motions to dismiss will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Sunken Treasure, Inc. (hereinafter "STI") is a Florida corporation engaged in the business of raising sunken ships, their remains, and treasure from the ocean floor. In 1991, STI commenced preparation for salvage operations in the Estate Salt River area upon belief that remains of a vessel from the era of Christopher Columbus existed there. STI intended to raise an anchor embedded in the submerged lands at Salt River, where historic remains such as anchors, chunks of metal, and cannons are commonly known to exist and, some believe, have remained for centuries.

The defendant vessel, all parties agree, is unidentified, wrecked and abandoned beneath the navigable waters of the United States, within three miles of the coast of St. Croix, and thus within the territorial waters of the United States Virgin Islands pursuant to 43 U.S.C. § 2101(e) and (f). The submerged lands upon which the vessel presumably rests belong to the Government of the Virgin Islands as provided by federal statute. 48 U.S.C. § 1705. The vessel

is also located in an area that the United States Congress has designated as a National Historic Park and Ecological Preserve. 16 U.S.C. § 410tt-1.

Portions of the vessel are "embedded" within the submerged lands such that the use of tools of excavation may be required in order to gain access to these portions. Because the salvage operations intended by STI will necessarily require dredging activity and/or alteration of navigable waters, local and federal permits are required. STI has not received any local or federal permits to excavate or remove artifacts or objects from the wreck site. Consequently, the Department of Planning and Natural Resources (hereinafter "DPNR") instructed STI not to remove anything from Salt River. STI has complied with this instruction and accordingly has not commenced salvage operations.[1]

On September 18, 1991, STI initiated the instant litigation by filing a complaint in rem against the alleged shipwreck seeking to be placed in exclusive possession and title of the vessel and its remains or, alternatively, to be granted a salvage award. STI also filed motions for temporary restraints and preliminary and permanent injunctions, seeking to prevent all persons and governmental agencies from interfering with STI's intended salvage operations. The United States of America (hereinafter "U.S.A.") and the Government of the Virgin Islands (hereinafter "GVI") subsequently intervened as defendant and plaintiff, respectively. Both intervenors seek to be declared owners of the defendant vessel pursuant to the Abandoned Shipwreck Act of 1987, 43 U.S.C. § 2105 et seq. (hereinafter the "ASA"), and seek an order restraining STI from conducting salvage operations in Salt River.

This Court denied STI's initial request for temporary restraints and has refrained from ruling on the injunctive relief sought by the U.S.A. and the GVI, opting instead to instruct all parties to submit proposed findings of fact and conclusions of law in relation to the respective underlying claims. All parties have complied with this

---

[1] No formal licensing procedure for salvage operations existed in the Virgin Islands at the time STI sought to commence the Salt River project, nor is such a procedure currently in place. Accordingly, STI sought authorization through an act of the Virgin Islands legislature. STI's apparent loss of patience with the legislative channels led STI to prepare to commence operations despite the lack of formal authorization; that activity subsequently triggered the confrontation with the DPNR and ultimately resulted in the instant litigation.

request and have additionally provided the Court with numerous supplemental briefs.

## II. DISCUSSION

A. *Issue Before Court*

The underlying core of this litigation is STI's facial constitutional challenge of the ASA. All parties effectively agree that STI's complaint in this action stands or falls on this Court's ruling in regard to the constitutional validity of that statute.

The significance of the ASA in this case is born out by a summary review of the jurisdictional framework surrounding the litigation. STI brings this lawsuit pursuant to 28 U.S.C. § 1333 as an admiralty action under the maritime law of salvage and/or the related doctrine of finds, primarily seeking a salvage award for its intended efforts to recover items from the defendant vessel and alternatively seeking title to the vessel and such items contained within it.

The U.S.A. and the GVI challenge the jurisdictional basis of STI's action on the grounds that the ASA governs this matter and statutorily divests this Court of jurisdiction. This argument is grounded on two operative effects of the ASA: first, the assumption of title by the United States to abandoned shipwrecks[2] that are, inter alia, "embedded"[3] in the submerged lands of a state (which, for purposes of the ASA, includes lands of the Virgin Islands)[4] and the transfer of such title to that state, id. §§ 2105(a)(1), (c); second, the exclusion of the aforementioned shipwrecks from the laws of salvage and finds. Id. § 2106(a).

Assuming both the applicability and constitutionality of the ASA, its effect in this case would be (1) to transfer ownership of the defendant vessel to the GVI, (2) to deprive STI of a cause of action based on the law of salvage and/or the law of finds, (3) to divest this Court of admiralty jurisdiction over the claim, and (4) to concurrently vest the Virgin Islands Territorial Courts with jurisdiction

---

[2] "Shipwreck" under the ASA refers to "a vessel or wreck, its cargo, and other contents." 43 U.S.C. § 2102(d).

[3] For purposes of the ASA, "embedded" is defined as

. . . firmly affixed in the submerged lands or in coralline formations such that the use of tools of excavation is required in order to move the bottom sediments to gain access to the shipwreck, its cargo, and any part thereof. . . .

43 U.S.C. § 2101(a).

[4] See id. §§ 2102(e), (f)(3), and statute cited therein.

278

over the claim. Zych v. Unidentified, Wrecked, and Abandoned Vessel, Believed to be the SB "Seabird," 941 F.2d 525 (7th Cir. 1991) (Zych II).

The applicability of the ASA is effectively undisputed among the parties. STI concedes that the defendant vessel is abandoned and at least partly embedded within the submerged lands of the United States Virgin Islands for purposes of the ASA. It is the constitutionality of the statute that STI challenges in seeking to retain jurisdiction in this Court and to ultimately prevail on the merits of its complaint. As the fate of STI's complaint thus hinges on the validity of the ASA, the Court accordingly must now address the substance of STI's constitutional challenge.

B. *Constitutionality of ASA*

STI contends that the ASA is unconstitutional on its face for three independent reasons. The arguments are: first, that the statute, in categorically excepting a class of abandoned shipwrecks from the law of salvage and the law of finds, impermissibly excludes from federal courts' admiralty jurisdiction something that falls "clearly within" it, and thus exceeds the amount that Congress may validly alter the boundaries of admiralty jurisdiction; second, that the ASA violates the principle that maritime law must be uniform; third, that the ASA violates the Fifth Amendment Due Process clause in that the "embeddedness" distinction is not rationally related to a valid public purpose.

Each of these arguments have recently been considered and rejected by the Seventh Circuit in several opinions relating to one case, Zych, cited above. That case involved analogous facts to those in this case: the finder of an abandoned shipwreck in the waters of Lake Michigan brought an admiralty action in rem seeking title to the wreck, and state agencies intervened seeking to enforce the ASA and obtain a dismissal of the action. Of the two district and two circuit opinions entered in Zych, the most comprehensive is that of Judge Ilana Diamond Rovner, 811 F. Supp. 1300 (N.D. Ill. 1992) (Zych III), aff'd, 19 F.3d 1136 (7th Cir. 1994), wherein the court scrupulously analyzed a series of constitutional objections to the ASA, and ultimately held the statute constitutional, resulting in the dismissal of the plaintiff's complaint for lack of admiralty jurisdiction. This Court, while not bound, elects to follow Zych in ruling on the constitutional challenges raised by STI, which challenges are discussed in turn below.

## 1. *ASA's Exclusion of Law of Salvage and Law of Finds*

■■ It is undisputed among the parties that the ASA eliminates the laws of salvage and finds as causes of action in cases relating to abandoned shipwrecks that fall within the ASA's statutory framework. 43 U.S.C. § 2106(a). Inasmuch as these two doctrines provide abandoned shipwreck salvors and finders with what is effectively their sole basis for stating a claim under the laws of admiralty, this exclusion effectively divests federal courts of jurisdiction over disputes relating to such shipwrecks; such a result is confirmed by the Seventh Circuit in Zych II. 941 F.2d at 530. A constitutional question thus arises as to whether Congress has abused the parameters established in the case law that endeavor to define how extensively admiralty jurisdiction may be modified through legislation.[5]

■ The Supreme Court long ago clarified that Congress has some leeway to "alter, qualify or supplement [admiralty and maritime law] as experience or changing conditions might require." Panama R. Co. v. Johnson, 264 U.S. 375 (1924). That leeway, the Panama Court went on to observe, is limited by two "well recognized" limitations:

> One is that there are boundaries to the maritime law and admiralty jurisdiction which inhere in those subjects and cannot be altered by legislation, as by excluding a thing falling clearly within them or including a thing falling clearly without. Another is that the spirit and purpose of the constitutional provision require that the enactments . . . shall be co-extensive with and operate uniformly in the whole of the United States.

Id. at 386–87. Extrapolating from the dictates of Panama, the Seventh Circuit in Zych determined that Congress may not "'expand and contract admiralty jurisdiction'" or "leave admiralty law non-uniform." Zych II, 941 F.2d at 531 (quoting Lucas v. "Brinknes" Schiffahrts Ges. Franz Lange G.m.B.H. & Co., K.G., 387 F. Supp. 440, 443 (E.D. Pa. 1974) (three-judge panel). It is STI's contention

---

[5] Article III, section 2 of the United States Constitution confers upon the federal courts "all Cases of admiralty and maritime Jurisdiction." This jurisdiction is exclusive to federal courts pursuant to 28 U.S.C. § 1333(1).

that both limitations noted by the Panama Court are violated by the ASA.[6]

■ At first glance, that the ASA concededly divests federal courts of admiralty jurisdiction over certain abandoned shipwrecks by eliminating the laws of salvage and finds seems to fly in the face of Panama, in that such a result appears to blatantly "contract" (i.e. shrink) admiralty jurisdiction.[7] Not so fast, Zych intimates, as first glances can be deceiving. Such a syllogism presupposes that, prior to the ASA's enactment, the laws of salvage and finds in fact applied to the classes of abandoned shipwrecks that now fall under § 2105 of the ASA. Alternatively phrased, the question to answer is whether, absent the ASA, the laws of salvage or of finds would provide this Court with jurisdiction to hear STI's claims to the defendant vessel. See Zych III, 811 F. Supp. at 130. Further analysis reveals that neither doctrine would convey such jurisdiction.

a. *Law of Salvage*

■ The Court need not dwell on the applicability of the law of salvage; recent case law has clearly established that, while the law of salvage is generally favored over the law of finds[8] and does ap-

---

[6] The first limitation noted above is the basis of STI's first constitutional objection, discussed in this section; the second, "uniformity" limitation is the basis of STI's second objection, discussed infra in section II.B.2.

[7] Much discussion has occurred in the case law as to whether or not the laws of salvage and finds even fall within the traditional confines of admiralty jurisdiction. Were these doctrines to be deemed outside of admiralty jurisdiction, the ASA's impact on the doctrines would not raise constitutional eyebrows. This Court, however, accepts the consistently drawn conclusion among circuit courts recently addressing the issue that, in modern times, both the law of salvage and the law of finds are properly included within the scope of admiralty jurisdiction when employed in the context of abandoned shipwreck litigation. See, e.g., Zych II, 941 F.2d at 532; Columbus-America Discovery Group v. Atlantic Mutual Ins. Co., 974 F.2d 450, 460–66 (4th Cir. 1992), cert. denied, 113 S. Ct. 1625 (1993). See also Zych III, 811 F. Supp. at 1314 (holding law of salvage "unquestionably" grounded in admiralty, and that law of finds operates with same jurisdictional basis despite having originated in common law).

[8] The origin of and distinction between the two doctrines is summarized in Columbus-America, wherein the court noted:
Historically, courts have applied the maritime law of salvage when ships or their cargo have been recovered from the bottom of the sea by those other than their owners. Under this law, the original owners still retain

281

ply to shipwrecks whose owners are identifiable, it does not apply to abandoned shipwrecks. Columbus-America, 974 F.2d at 459–65; Zych III, 811 F. Supp. at 130–32. The Zych court articulated the rationale underlying the limited scope of salvage law as follows:

> [A]pplication of the law of salvage to abandoned shipwrecks would be absurd, because salvage law is premised upon the assumption of continuing ownership over the submerged articles, an element not present where a historic shipwreck has been abandoned and no competing claims of ownership have been asserted.

Zych III, 811 F. Supp. at 130 (citing Zych, 746 F. Supp. 1334, 1343–44 n. 12 (N.D. Ill. 1990) (Zych I); Klein v. Unidentified Wrecked and Abandoned Sailing Vessel, 758 F.2d 1511, 1514 (11th Cir. 1985); Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel, 569 F.2d 330, 337 (5th Cir. 1978)); see also Columbus–America, 974 F.2d at 462.[9]

■ Because the ASA applies only to abandoned shipwrecks "which have been deserted and to which the owner has relin-

---

their ownership interests in such property, although the salvors are entitled to a very liberal salvage award. . . .
 A related legal doctrine is the common law of finds, which expresses "the ancient and honorable principle of 'finders, keepers.' " . . . Traditionally, the law of finds was applied only to maritime property which had never been owned by anybody, such as ambergris, whales and fish .... A relatively recent trend in the law, though, has seen the law of finds applied to long lost and abandoned shipwrecks.
974 F.2d at 459–60 (citations omitted).

[9] The court in Columbus-America concluded:
 [W]hen sunken ships or their cargo are rescued from the bottom of the ocean by those other than the owners, courts favor applying the law of salvage over the law of finds. *Finds law should be applied, however, in situations where the previous owners are found to have abandoned their property. . . . Should the property encompass an ancient and longlost shipwreck, a court may infer an abandonment.*
974 F.2d at 464–65 (emphasis added).
 Despite its concession that the defendant vessel is indeed abandoned, STI inexplicably concludes that its "position is in agreement with that of the Columbus-America Court in that [STI] is entitled to a salvage award." Plaintiff's Supplemental Memorandum Regarding Injunctive Relief, at 3. Clearly this analysis is based on a misreading of Columbus-America, as that opinion stands for, inter alia, the proposition that the law of salvage does not apply to abandoned shipwrecks.

quished ownership rights with no retention," 43 U.S.C. § 2101(b), the law of salvage is not "contracted" or otherwise compromised by the ASA, in that, absent the statute, such shipwrecks would be governed by the law of finds, not salvage. Zych IV, 19 F.3d at 1141; Zych III, 811 F. Supp. at 131–32. Accordingly, no constitutional violation arises from the ASA's elimination of the law of salvage.

### b. *Law of Finds*

As the analysis contained in the above section makes clear, the law of finds is prima facie applicable to abandoned shipwrecks. Such applicability makes the ASA's impact on the law of finds a closer constitutional question than its impact on the law of salvage.

■■ The result, however, is ultimately the same. The reason: while the law of finds indeed applies to abandoned shipwrecks generally, a long-standing exception to the doctrine provides that shipwrecks embedded in the submerged lands of a state are state property, title vesting to the state as a matter of law. See Zych III, 811 F. Supp. at 1314 (citing cases). No salvage claim could stand in federal court once the state becomes owner of the vessel, as eleventh amendment immunity shields states from such an action. Zych IV, 19 F.3d 1136; see also Zych III, 1312–13 (citing, inter alia, Florida Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 684 (1982); Subaqueous Exploration & Archeology, Ltd. v. Unidentified, Wrecked and Abandoned Vessel, 577 F. Supp. 597, 606 (D. Md. 1983), aff'd, 765 F.2d 139 (4th Cir. 1985).[10]

---

[10] While not shielded by the eleventh amendment per se, the Virgin Islands is similarly shielded from a salvor's claim by virtue of the inherent or common law sovereign immunity recognized by the courts as attaching to territorial governments. See Marx v. Government of Guam, 866 F.2d 294, 297–98 (9th Cir. 1989) (recognizing Guam's sovereign immunity from in rem action initiated by intended salvor; noting that limited narrowing of Guam's immunity pursuant to its Organic Act did not destroy inherent immunity; and holding that Guam's seeking of relief on immunity grounds did not result in waiver of the very immunity it sought to enforce); cf. Davis v. Knud-Hansen Memorial Hospital, 635 F.2d 179 (3d Cir. 1980) (discussing Virgin Islands' sovereign immunity generally). But see Tonder v. M/V The "Burkholder", 630 F. Supp. 691 (D.V.I. 1986) (holding salvage action permissible against College of Virgin Islands as result of eleventh amendment inapplicability). This Court rejects the conclusion reached by the court in Tonder. Underlying the court's analysis in that case was the assumption that the eleventh amendment is the only source of sovereign immunity, and that the inapplicability of the amendment in a

■ As the ASA applies to embedded shipwrecks, see 43 U.S.C. § 2105(a), and inasmuch as the parties in the instant case agree that the defendant vessel is indeed embedded, the ASA's impact on the defendant vessel is parallel to the result that would otherwise be reached under the law of finds. The court in Zych explains:

> The initial inquiry is therefore the same pre- and post-ASA. Once the federal court determines that a wreck is both abandoned and embedded, the ASA would vest title in the state and eliminate any admiralty claim under the laws of salvage and finds. 43 U.S.C. §§ 2105(c) and 2106. In addition, because the laws of salvage and finds generally are the only admiralty causes of action that would confer federal jurisdiction over a shipwreck case, the court would be required to dismiss the action for lack of jurisdiction. See Zych [II], 941 F.2d at 528. The end result is therefore identical to that reached through application of the law of finds—the state holds title to the wrecked vessel pursuant to the ASA, and the federal court lacks jurisdiction over any claim for salvage.
>
> As the above comparison makes clear, the federal court has retained jurisdiction to perform an identical function under both the law of finds and the ASA—that is, to determine whether the wreck has been abandoned and whether it is embedded. If the court finds both abandonment and embeddedness, title is vested in the state, either through application of the embeddedness exception to the law of finds, or through operation of the statute itself. Because the federal court has performed essentially the same function in each instance, the [ASA] has not had a substantial effect on federal jurisdiction. . . .

811 F. Supp. at 1315. Consequently, like with the law of salvage, the ASA's impact on the law of finds is effectively nil and thus does not contravene the first limitation articulated in Panama.[11]

---

territory necessitated the conclusion that territories enjoy no corresponding immunity. See id. at 693–94. The more extensive analysis in Marx reveals sources of such immunity that are collateral to the eleventh amendment, see Marx, 866 F.2d at 297–98, and in this Court's view, constitutes a more accurate appraisal of the issue.

[11] To the extent that the constitutionality of the ASA as it relates to the law of finds turns on the embeddedness exception to that doctrine, this Court imposes a

## 2. *Uniformity*

Nor does the ASA contravene the second Panama limitation, which requires that legislative enactments that impact admiralty jurisdiction be employed uniformly among the states. 264 U.S. at 386–87. STI argues that the ASA violates the uniformity requirement in that the statute allows each state to develop its own rules governing abandoned shipwrecks to which it holds title.

 Yet the rationale underlying the ASA's constitutionality in regard to the first Panama limitation necessarily leads to the conclusion that the second Panama limitation is not implicated. Simply put, having held above that admiralty jurisdiction is virtually untouched by the ASA, it logically follows that no element of non-uniformity is introduced to admiralty jurisdiction vis a vis the ASA. As the Seventh Circuit has observed,

> [i]f the ASA passes the first constitutional hurdle, then it passes constitutional muster, for it does not violate the second requirement that admiralty law foster uniformity. . . . The uniformity principle leaves states free to enact and enforce legislation that is neither "hostile to the characteristic features of the maritime law or inconsistent with federal legislation." Just v. Chambers, 312 U.S. 383, 388 . . . [1941]. It thus follows that if the management of historic wreck sites is not a concern central to admiralty, state regulation in the area is permissible. If the ASA permissibly takes embedded shipwrecks entirely out of the realm of federal admiralty jurisdiction, the uniformity principle has not been violated.

Zych II, 941 F.2d at 532–33 (footnotes omitted). Accordingly, the ASA is deemed to satisfy both aspects of the Panama Court's test for legislative enactments relating to admiralty law.

---

constitutional seal of approval on the ASA only inasmuch as it applies to embedded shipwrecks. Accordingly, the Court does not pass judgment on 43 U.S.C. § 2105(a)(3), which includes within the ASA non-embedded abandoned shipwreck that are "on submerged lands of a State and [are] included in or determined eligible for inclusion in the National Register." In the instant action, however, as STI concedes that the defendant vessel is indeed embedded, the ASA governs by way of § 2105(a)(i), which applies to abandoned shipwrecks "embedded in submerged lands of a state." The statute thus survives STI's first constitutional challenge under the facts and law applicable in this case.

285

### 3. *Due Process*

STI's third and final constitutional challenge to the ASA is grounded on the premise that the inclusion of all "embedded" abandoned shipwrecks is unduly broad and does not rationally relate to a legitimate legislative purpose, thus violating the Due Process clause of the Fifth Amendment to the United States Constitution. Citing the House Report on the ASA, STI notes that Congress's intention was limited to regulating abandoned "historic" shipwrecks, H.R. Rep. No. 100–514(I), 100th Cong., 2d Sess., reprinted in 1988 U.S.C.C.A.N. 365 (hereinafter "House Report"); including all "embedded" shipwrecks in the statute, STI argues, goes far beyond the goal of historic preservation for no legitimate reason.[12]

■ To pass muster under the principles of substantive due process, a legislative enactment must not be arbitrary and must reasonably relate to a legitimate legislative purpose. Lapides v. Clark, 176 F.2d 619 (D.C. Cir.), cert. denied, 338 U.S. 860 (1949); Zych III, 811 F. Supp. at 1316 (citing, inter alia, Nebbia v. New York, 291 U.S. 502, 525 (1934). The ASA satisfies this standard.

■ Congress faced a difficult task in attempting to come up with a suitable definition for shipwrecks that would be governed by the ASA, in that the goal of preserving "historic" wrecks—a term laden with subjectivity notwithstanding its legitimacy—does not lend itself to precise legislative categorization. As the court concluded in Zych III, the final version of the ASA included several prerequisite factors which together serve to narrow the scope in a manner that rationally relates to its abovestated goal. That court observed:

> Although the Act may be overly inclusive, it is difficult to imagine how to limit its scope while adequately serving the express legislative purpose. For example, if Congress had limited the reach of the [ASA] only to those wrecks "included or determined eligible for inclusion in the National Register," [43 U.S.C. § 2105(a)(3)] thereby ensuring that only wrecks of historic significance would be encompassed, the statute would

---

[12] STI further points out that, of the estimated 50,000 shipwrecks to which the ASA may be applied, only five to ten percent are presumed to have any historical significance. House Report at 365.

not be sufficiently inclusive because it would apply only to wrecks whose approximate location is known. . . .

. . . Although plaintiff correctly points out that it is likely that almost all shipwrecks will become embedded in time, it is unlikely that a relatively recent shipwreck—one with presumably no historic significance—would also be abandoned by its owner. . . . Thus, it is the interplay between the requirements that a shipwreck be both embedded and abandoned that limits the scope of the [ASA] so as to more narrowly serve the legislative purpose.

811 F. Supp. at 1316–17. The court in Zych thus concluded that, when viewed in conjunction with the abandonment requirement, the ASA's use of embeddedness as one litmus test for determining the applicability of the statute to a shipwreck satisfies due process concerns. Id. at 1317. This Court concurs with that reasoning, which lies on all fours with the challenge waged by STI in this case.

 Finally on this issue, the Court notes that STI's challenge of the "embeddedness" requirement for its alleged overbreadth rings hollow in light of the facts in this case. The defendant vessel, several hundred years old and potentially related to the voyages of Christopher Columbus, is undoubtedly of great historical significance and a quintessential example of the type of shipwreck Congress sought to preserve. Certainly STI cannot contend that its claim to the vessel has been swept under the auspices of the ASA on grounds of embeddedness alone, and that absent such a broad requirement would have bypassed ASA jurisdiction. Regardless, the Court finds that the statute on its face does not offend due process.

## IV. CONCLUSION

Having disposed of STI's constitutional objections, the Court concludes that the ASA is constitutional, governs the instant dispute, and thus, as discussed above, divests this Court of jurisdiction to adjudicate STI's claims. See Zych II, 941 F.2d at 528; Zych III, 811 F. Supp. at 1321. The motions of the U.S.A. and GVI to dismiss STI's complaint shall accordingly be granted.

As title to the defendant vessel is, pursuant to the ASA, vested with the GVI, the courts of that governmental body are the proper forum for subsequent proceedings relating to the vessel. See Zych

II, 941 F.2d at 528. Furthermore, in order to facilitate "the protection of historical values and environmental integrity" relating to the defendant vessel and others like it, 43 U.S.C. § 2103(a)(2)(C), the GVI would be well advised to carry out its congressionally-declared responsibility to manage its "nonliving resources in [its] waters and submerged lands" by creating appropriate legislative procedures. Id. § 2101(a).

An appropriate Order will be entered.

## ORDER GRANTING MOTIONS TO DISMISS

This matter having arisen on the Government of the Virgin Islands' Motion to Dismiss Plaintiff's Complaint in rem against the defendant vessel and, concomitantly, on the United States' Motion to Dismiss or for Summary Judgment; and

For the reasons provided in the Court's Opinion of the date;

IT IS on this 14th day of July, 1994, HEREBY ORDERED that the respective motions to dismiss are GRANTED; and

IT IS FURTHER ORDERED that Plaintiff's complaint is DISMISSED WITH PREJUDICE.