WILLIAM RUSHWORTH & others[1] vs. REGISTRAR OF
MOTOR VEHICLES.

Suffolk. May 5, 1992. - July 27, 1992.

Present: LIACOS, C J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Due Process of Law*, Suspension of driver's license. *Motor Vehicle*, License
to operate. *Constitutional Law*, Equal protection of laws, Double jeop-
ardy. *Statute*, Validity.

General Laws c. 90, § 22 (*f*), which requires the Registrar of Motor Vehi-
cles automatically to suspend the driver's license or right to operate of a
person convicted of violating G. L. c. 94C, the Controlled Substances
Act, does not, on its face, violate the due process [268-271] or equal
protection [271-272] guarantees of either the Federal or Massachusetts
Constitution.
General Laws c. 90, § 22 (*f*), which requires the Registrar of Motor Vehi-
cles automatically to suspend the driver's license or right to operate of a
person convicted of violating G. L. c. 94C, the Controlled Substances
Act, does not constitute a second punishment for the same offense in
violation of the constitutional protection against double jeopardy. [272-
274]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 26, 1991.

The case was reported to the Appeals Court by *Elbert
Tuttle*, J., on a statement of agreed facts. The Supreme Judi-
cial Court granted a request for direct review.

*John Reinstein* (*Sarah Jennings Hunt* with him) for the
plaintiffs.

*Pierce O. Cray*, Assistant Attorney General, for the
defendant.

---

[1] William Sullivan and James B. Peterson, Sr.

Rushworth v. Registrar of Motor Vehicles.

GREANEY, J. At issue is the validity of G. L. c. 90, § 22 (*f*),[2] which requires the Registrar of Motor Vehicles automatically to suspend the driver's license or right to operate of a person convicted of violating G. L. c. 94C (1990 ed.), the Controlled Substances Act. The plaintiffs, three adult men whose licenses have been suspended pursuant to the statute, brought an action in the Superior Court against the Registrar seeking declaratory and injunctive relief. A statement of agreed facts and exhibits were filed, and a judge in the Superior Court reported the case for determination to the Appeals Court pursuant to G. L. c. 231, § 111, third par. (1990 ed.), and Mass. R. Civ. P. 64, 365 Mass. 831 (1974). We granted the plaintiffs' application for direct appellate review. The plaintiffs challenge the statute on due process, equal protection, and double jeopardy grounds. We reject their challenges and direct the entry of a declaratory judgment upholding the statute against the challenges made.

The following is the background of the case. As noted, G. L. c. 90, § 22 (*f*), requires that the Registrar suspend, for a period not to exceed five years, the driver's license or right to operate of a person convicted of violating any provision of G. L. c. 94C. Section 22 (*f*) itself is silent as to the minimum period of suspension and the criteria that the Registrar is to employ in determining its length. To add consistency to license suspensions that are imposed, the Registrar has established guidelines that contain a "Suspension Schedule." Generally, under the schedule, persons convicted of a simple pos-

---

[2]General Laws c. 90, § 22 (*f*), inserted by St. 1989, c. 241, states as follows:

"The registrar shall suspend, without hearing, the license or right to operate of a person who is convicted of a violation of any provision of chapter ninety-four C or adjudged a delinquent child by reason of having violated any provision of chapter ninety-four C; provided, however, that the period of such suspension shall not exceed five years; provided further, that any person so convicted who is under the age of eighteen years or who is adjudged a delinquent child by reason of having violated any provision of chapter ninety-four C, and is not licensed to operate a motor vehicle shall, at the discretion of the presiding judge, not be so licensed for a period no later than when such person reaches the age of twenty-one years."

session offense under G. L. c. 94C receive one-year suspensions; those convicted of possession with intent to distribute a class D or E substance incur two-year suspensions; those convicted of possession with intent to distribute a class A, B, or C substance have their licenses suspended for three years (four years if it is their second offense); and those convicted of drug trafficking have their licenses suspended for five years. The guidelines promulgated by the Registrar also provide for an "Early Reinstatement Process," which allows a person who has completed one-half of the suspension to request the early reinstatement of driving privileges.[3]

The plaintiff William Rushworth was arrested after marihuana was found on the passenger seat of his parked car. Rushworth admitted to sufficient facts and was found guilty in a District Court of possession of a class D substance (G. L. c. 94C, § 34), and was fined $500. The Registrar, acting pursuant to § 22 (f) and his suspension schedule, notified Rushworth that his license would be suspended for one year, and that on completion of one-half of his suspension period, he would be eligible to apply for early reinstatement. Rushworth appealed from his suspension to the board of appeals on motor vehicle liability policies and bonds (board). His appeal was denied.

The plaintiff William Sullivan's truck was searched at a Department of Transportation checkpoint. The police found marihuana and one pill for which Sullivan had no prescription. Sullivan was convicted in a District Court of possession of marihuana (G. L. c. 94C, § 34), and possession of an un-

---

[3]Under the "Early Reinstatement Process," a person is afforded a hearing in which the case is evaluated by a hearings officer. The hearings officer reaches a decision on reinstatement based on a number of factors, including the following: (1) whether the person's license has been surrendered to the Registry; (2) whether the person can demonstrate to the hearings officer that continued suspension will cause severe hardship; (3) whether there is any evidence that the person has operated a motor vehicle during the period of suspension; and (4) whether there is any evidence of additional G. L. c. 94C violations. These factors furnish generally minimum guidelines, and the decision whether to reinstate is a discretionary one on the part of the Registrar.

scheduled prescription drug (same). He was fined and placed on probation for six months. Pursuant to § 22 (*f*), and the suspension schedule, the Registrar suspended Sullivan's driver's license for one year. Sullivan did not appeal from his suspension to the board.

The plaintiff James Peterson was arrested after a search of his home pursuant to a warrant led to the seizure of marihuana. Peterson entered an admission of sufficient facts in a District Court to a charge of possession with intent to distribute a class D substance (G. L. c. 94C, § 32C). Peterson was sentenced to a two-year term in a house of correction, thirty days to be served and the balance to be suspended. He was also fined and assessed costs. The Registrar, acting pursuant to § 22 (*f*), and the suspension schedule, suspended Peterson's license for two years. Peterson did not appeal from his suspension to the board.[4] Each of the plaintiffs claims to have suffered substantial hardship as a result of the suspension imposed on him. Two are truck drivers, and the third lives thirty miles from his job without access to public transportation.

1. *Due process.* The plaintiffs first argue that § 22 (*f*) violates their substantive due process rights. Under the due process clause of the Fourteenth Amendment to the United States Constitution, a statute will satisfy due process if it "bears a reasonable relation to a permissible legislative objective." *Pinnick* v. *Cleary*, 360 Mass. 1, 14 (1971). Under Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution and arts. 1, 10, and 12 of the Declaration of Rights, a statute will satisfy due process if it "bears a real and substantial relation to the public health, safety, morals, or some other

---

[4]The remedy of appeal to the board, which the Registrar suggests was available and not exhausted by the plaintiffs Sullivan and Peterson, is not fatal to their participation in the declaratory judgment action. Where, as is the case here, government action is alleged to be occurring under a statute which is unconstitutional, it is appropriate for the courts, as soon as reasonably possible, to resolve challenges to the validity of the statute. See *School Comm. of Springfield* v. *Board of Educ.*, 362 Mass. 417, 431-432 (1972); *Saint Luke's Hosp.* v. *Labor Relations Comm'n*, 320 Mass. 467, 469-470 (1946).

phase of the general welfare." *Sperry & Hutchinson Co.* v. *Director of the Div. on the Necessaries of Life*, 307 Mass. 408, 418 (1940).

The plaintiffs argue that the State due process provisions afford a "stricter" standard of due process review than the Fourteenth Amendment, and that § 22 (*f*) cannot pass that stricter test. Alternatively, the plaintiffs contend that even under the Fourteenth Amendment, § 22 (*f*) must be found to violate due process protections.[5] We do not agree.

This court has noted that, in examining a statute against due process challenges like those made here, "we have *occasionally* been less willing than the Federal courts to ascribe to the Legislature speculative and implausible ends, or to find rational the nexus said to exist between a plausible end and the chosen statutory means" (emphasis supplied). *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing*, 379 Mass. 368, 373 n.8 (1979). On occasion, in areas not involving protected or fundamental rights, we have struck down statutes solely for violation of State due process standards. See, e.g., *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health*, 348 Mass. 414, 421 (1965) (statute totally prohibited the sale within the Commonwealth of a wholesome food product); *Sperry & Hutchinson Co.* v. *Director of the Div. on the Necessaries of Life*, *supra* at 418 (statute bore no relation to public health, safety, or morals). These two decisions involved statutes having little or no perceptible relation to the discernible public good. However, in cases in which such a relationship is apparent, we generally have stated that "[a]ny difference between the two constitutional standards [governing due process] . . . is narrow," *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming*

---

[5]The plaintiffs do not assert that any fundamental right is at stake, and it is clear that there is no fundamental right to operate a motor vehicle. See, e.g., *Raper* v. *Lucey*, 488 F.2d 748, 751 (1st Cir. 1973) ("we may take it as settled that such a right, federal or state, does not exist"). As a result, § 22 (*f*) will not be subject to "strict" scrutiny, but rather to minimum scrutiny under a rational basis standard. *Marshfield Family Skateland, Inc.* v. *Marshfield*, 389 Mass. 436, 445 (1983).

& *Funeral Directing, supra* at 373 n.8, and "that the due process provisions of the Massachusetts Constitution . . . afford protection comparable to that supplied by the Fourteenth Amendment." *Boston* v. *Keene Corp.*, 406 Mass. 301, 308 n.8 (1989). See *Zeller* v. *Cantu*, 395 Mass. 76, 83-84 (1985); *Commonwealth* v. *Franklin Fruit Co.*, 388 Mass. 228, 235 (1983); *Klein* v. *Catalano*, 386 Mass. 701, 707 n.6 (1982).

Section 22 (*f*) is not like the statutes considered in the *Coffee-Rich* and *Sperry & Hutchinson Co.* cases, and we think our due process inquiry should more properly be focussed on whether § 22 (*f*) bears a reasonable relation to a permissible legislative objective. In making that inquiry, we keep in mind that § 22 (*f*) is entitled to a presumption of validity, *Marshal House, Inc.* v. *Rent Control Bd. of Brookline*, 358 Mass. 686, 694-695 (1971), and the plaintiffs have the burden of demonstrating that the statute lacks a rational basis. *Commonwealth* v. *Franklin Fruit Co.*, *supra*. *Klein* v. *Catalano, supra* at 706-707.

The plaintiffs argue that the suspensions mandated by G. L. c. 90, § 22 (*f*), violate due process because the statute does not further the purposes of G. L. c. 90, the comprehensive law regulating motor vehicles. They claim that the suspension of a driver's license, after a conviction under G. L. c. 94C, is irrational, particularly where the c. 94C violation is unconnected in any way with the safe operation of a motor vehicle.

The validity of § 22 (*f*), however, is not pinned to the plaintiffs' view of what the statute should seek to accomplish. Rather, as has been stated above, the examination concerns whether § 22 (*f*) serves a legitimate purpose in a rational way. *Shell Oil Co.* v. *Revere*, 383 Mass. 682, 686 (1981). The choice of purpose and means is for the Legislature to make. Section 22 (*f*) clearly satisfies this standard. The Legislature could have concluded that the unlawful sale and use of drugs constitutes a serious problem in the Commonwealth, and that license suspensions for those who are convicted of violations of G. L. c. 94C could serve as a deterrent to illegal

drug distribution and use, and as a means of rehabilitation. Further, the Legislature could have considered that license suspensions will in some cases further the goals of G. L. c. 90, § 24 (1) (a) (1), by keeping impaired drivers off the roads. These goals are proper legislative objectives.[6] *Commonwealth v. McQuoid*, 369 Mass. 925, 927 (1976). *Marshal House, Inc. v. Rent Control Bd. of Brookline, supra* at 695.

2. *Equal protection.* The plaintiffs next claim that § 22 (*f*) violates the equal protection guarantees provided by the Fourteenth Amendment and arts. 1 and 10. The plaintiffs assert that § 22 (*f*) discriminates irrationally: (1) between operators who have been convicted of G. L. c. 94C violations and operators who have been convicted of other, more serious, crimes; (2) between those convicted under G. L. c. 94C who possess drivers' licenses and those who do not; and (3) between those who have access to public transportation and those who do not.

As was the case with their due process arguments, the plaintiffs bear a heavy burden in challenging the constitutionality of § 22 (*f*) on equal protection grounds. *Hallett v. Wrentham*, 398 Mass. 550, 557 (1986). Where "there is no infringement of fundamental rights or any suspect class, a statutory discrimination will be upheld if it is 'rationally re-

---

[6]The plaintiffs also assert that the legitimacy of the governmental interest in § 22 (*f*) is undercut by the fact that the statute impinges most severely on "casual" drug users who may be convicted of less serious offenses under G. L. c. 94C, because the penalty imposed on them will either involve no incarceration or only a short period of incarceration, thereby making the license suspension longer than the court-imposed punishment. Those convicted of more serious offenses under G. L. c. 94C, the plaintiffs claim, will most likely be incarcerated throughout the entire length of their license suspension, thus escaping the full sting of the statute. While this may be the practical effect of § 22 (*f*) in some cases, that consideration does not render the statute violative of due process. Once it is determined that § 22 (*f*) furthers legitimate legislative objectives of punishment and deterrence, it is for the Legislature to decide how the general problem ought to be addressed, and its action need not resolve or deal with every conceivable problem that may result from the solution it fashions. See *Commonwealth v. Leis*, 355 Mass. 189, 198 (1969).

lated to a legitimate State purpose.' " *Id.*, quoting *Paro* v. *Longwood Hosp.*, 373 Mass. 645, 649 (1977). The plaintiffs cannot plausibly maintain that statute works discrimination against any suspect or quasi-suspect class. Therefore, the standard employed for equal protection review is identical to that for due process analysis, rational basis review. *Boston* v. *Keene Corp.*, *supra* at 308 n.10. See *Dickerson* v. *Attorney Gen.*, 396 Mass. 740, 743 (1986) ("For the purpose of equal protection analysis, our standard of review under . . . the Massachusetts Declaration of Rights is the same as under the Fourteenth Amendment to the Federal Constitution"). See *Cohen* v. *Board of Water Comm'rs, Fire Dist. No. 1, S. Hadley*, 411 Mass. 744, 752-753 (1992).

As has been discussed above in connection with the plaintiffs' due process challenge, § 22 (*f*) rationally furthers legitimate State objectives. The Legislature appears to have determined that persons convicted of less serious drug offenses should suffer the penalty of license suspension while more serious offenders should be incarcerated. The Legislature may also have decided that added measures were needed to discourage drug use among "casual" drug users and to prevent impaired driving. That § 22 (*f*), in practice, may have an impact in a disproportionate manner on drug offenders who operate motor vehicles does not offend the equal protection clause. *Commonwealth* v. *McQuoid*, *supra* at 927-928. The plaintiffs allege no purposeful discrimination against any suspect or quasi-suspect class. Under the rationality test, § 22 (*f*) is clearly constitutional.

3. *Double jeopardy*. The plaintiffs' final claim is that § 22 (*f*) imposes a second punishment for the same offense, thereby violating the double jeopardy clause of the Fifth Amendment to the United States Constitution. The thrust of the argument is that, under the principles discussed in *United States* v. *Halper*, 490 U.S. 435 (1989), and *Kvitka* v. *Board of Registration in Medicine*, 407 Mass. 140 (1990), it cannot fairly be said that § 22 (*f*) imposes a remedial sanction.

The *Halper* and *Kvitka* cases involved the imposition of civil penalties in separate noncriminal proceedings against individuals who had been convicted in prior criminal proceedings.[7] The decisions have no application here.

The Legislature has the power to determine what punishment is to be imposed on a defendant's conviction, and, in this context, "the Double Jeopardy Clause does no more than prevent . . . greater punishment than the legislature intended." *Grady* v. *Corbin*, 495 U.S. 508, 516-517 (1990), quoting *Missouri* v. *Hunter*, 459 U.S. 359, 366 (1983). In the case of § 22 (*f*), the cumulative punishment of a license suspension in cases like those before us has been expressly directed by the Legislature. The Registrar has no discretion on whether to suspend, and suspension follows automatically from a conviction on an underlying drug offense as an ancillary part of the criminal proceedings. As a result of the legislative mandate, there can be no danger that license suspension is sought because the government is dissatisfied with the results of the prosecution. Thus, the consideration that underpins the results in the *Halper* and *Kvitka* decisions is not present. Once the Legislature has specifically authorized two

---

[7]In *United States* v. *Halper*, 490 U.S. 435 (1989), the Federal government recovered a $130,000 civil penalty from the defendant, who had been convicted of violating the Federal false claims statute in the amount of $585. The United States Supreme Court held that the double jeopardy clause barred the imposition of the civil penalty, and stated that, "when the Government already has imposed a criminal penalty and seeks to impose additional punishment in a second proceeding, the Double Jeopardy Clause protects against the possibility that the Government is seeking the second punishment because it is dissatisfied with the sanction obtained in the first proceeding." *Id*. at 451 n.10. The Court went on to state: "[T]he only proscription established by our ruling is that the Government may not criminally prosecute a defendant, impose a criminal penalty upon him, and then bring a separate civil action based on the same conduct and receive a judgment that is not rationally related to the goal of making the Government whole." *Id*. at 451. In *Kvitka* v. *Board of Registration in Medicine*, 407 Mass. 140 (1990), we held that the rule stated in *Halper* barred the board, in a separate proceeding, from imposing a $10,000 fine on a physician convicted of unlawfully dispensing controlled substances when the physician had already been punished in the Superior Court by a prison term and a $60,000 fine for the same criminal conduct. *Id*. at 144-146.

punishments, double jeopardy principles are not implicated, and the direction of the Legislature is to be enforced.

4. *Disposition.* The action is remanded to the Superior Court, where an appropriate judgment is to be entered declaring that G. L. c. 90, § 22 (*f*), does not violate due process, equal protection, or double jeopardy protections in the respects raised by the plaintiffs in their action.

*So ordered.*