**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**LEE J. ROHN, Defendant**

Case No. SX-03-CR-113
Superior Court of the Virgin Islands
Division of St. Croix
April 20, 2011

103

DUSTIN J. CALHOUN, ESQ.; MELISSA P. ORTIZ, ESQ., U.S. Virgin Islands Department of Justice, Christiansted, St. Croix, USVI, *Attorneys for the People.*

GORDON C. RHEA, ESQ., Richardson, Patrick, Westbrook & Brickman, LLC, Mt. Pleasant, SC; RYAN W. GREEN, ESQ., Law Offices of Rohn and Carpenter, LLC, Christiansted, St. Croix, USVI, *Attorneys for Defendant.*

DONOHUE, *Judge*

## MEMORANDUM OPINION

(April 20, 2011)

**THIS MATTER** presents an issue of first-impression in the U.S. Virgin Islands: whether a criminal defendant pleading guilty to, or convicted of, a first-offense of simple possession of a controlled substance, in violation of Section 607(a) of Title 19 of the Virgin Islands Code, must also have her license to operate a motor vehicle suspended for two-years, pursuant to Section 378 of Title 20 of the Virgin Islands Code. For the reasons stated below, the Court finds the mandatory revocation of driver's licenses unambiguous and constitutional.

## I. FACTS AND PROCEDURAL HISTORY

This matter came before the Court for a change of plea hearing.[1] Defendant Lee J. Rohn is charged with one count of possession of a controlled substance with intent to distribute, in violation of Section 604(a) of Title 19 of the Virgin Islands Code. (Information, filed April 4, 2003.) Rohn and the People of the Virgin Islands informed the Court that they had entered into an agreement whereby Rohn would plead guilty to

---

[1] When filed, this matter was captioned *Government of the Virgin Islands v. Lee J. Rohn.* In 2005, the Legislature of the Virgin Islands amended Section 114 of Title 3 of the Virgin Islands Code to direct that criminal prosecutions proceed "in the name of the People of the Virgin Islands . . ." Act. No. 6730, 2005 V.I. Sess. Laws 109. *Accord* V.I. CODE ANN. tit. 3, § 114(a)(3) (Supp. 2010).

the lesser-included offense of simple possession of a controlled substance, in violation of Section 607(a) of Title 19 of the Virgin Islands Code. (Plea Agmt., filed Nov. 19, 2010.)

At the hearing, counsel for the People proffered that the factual basis for the plea, which Rohn agreed with for purposes of the hearing, was a pre-flight screening in March 2003, during which a TSA agent at the Henry E. Rohlson International Airport on St. Croix, U.S. Virgin Islands, discovered in Rohn's luggage a substance suspected of being a controlled substance. (Plea Agmt ¶ 2.) *See generally Gov't of the V.I. v. Rohn*, 214 Fed. Appx. 187 (3d Cir. 2007). A field test yielded a positive result for marijuana. (Plea. Agmt. ¶ 2.) In exchange for pleading guilty to the lesser-included offense, the People recommended that the Court place Rohn on probation as a first-time offender. Before accepting the plea, the Court examined Rohn to determine her competency and to establish that her plea was voluntary. The Court also advised Rohn of the rights she was waiving and the penalties attendant to an offense of simple possession of a controlled substance. Rohn faced a maximum of one year in prison, a five-thousand dollar fine, or both. If Rohn were eligible as a first-time offender, she could be placed on probation for up to one year. Finally, the Court informed Rohn that her license to drive would be revoked for two years, pursuant to Section 378 of Title 20 of the Virgin Islands Code.

Upon learning of the license revocation, Rohn objected, claiming she was unaware of that penalty and had not been alerted to it by the People during their discussions. Counsel for the People also indicated that they believed Section 378 did not apply to first-time offenses of Section 607(a). The Court allowed the parties to argue the question discussed below. When it appeared that the parties were unprepared to discuss the intersection of Section 607 with Section 378, the Court then reserved ruling on the question and asked the parties to submit further arguments in writing. The Court continued with the change of plea and advised Rohn that she could withdraw her guilty plea if she disagreed with the decision below.

Both parties subsequently filed briefs. (Def. Br., filed Dec. 21, 2010; People's Br., filed Dec. 21, 2010.) Rohn challenges mandatory driver's license revocations for first-time offenders pleading guilty to simple possession of a controlled substance. She argues (1) that the statutes irreconcilably conflict resulting in an ambiguity the Court must resolve in her favor; (2) that subsequent amendments to the statutes at issue here

reflect legislative intent to exclude first-time offenders from mandatory license revocations; (3) that the two-year revocation is a harsh penalty for a first-time offender; and (4) that the public lacks fair warning of all consequences of pleading guilty to simple possession of a controlled substance. (Def. Br. 3-9.) Below the Court will address each argument.

## II. STATUTORY AMBIGUITY

Rohn argues that Section 607 and Section 378 are irreconcilable and result in ambiguity when read in tandem. "The statutes clearly conflict: one provision mandates a particular sentence while the other provision gives the Court discretion to place the defendant on probation and defer sentence." (Def. Br. 4.) The People concur regarding a conflict between Section 607 and Section 378. (People's Br. 1.) Particularly, the People note that

> the maximum time that a defendant can be placed upon probation under Section 607(b) is one year. However, the license suspension under Section 378 is for two years. These sections are in direct conflict as Section 607(b) requires the dismissal of the proceedings without an adjudication of guilt if the terms of probation are not violated. At that time the Court would no longer have jurisdiction over the Defendant to maintain a license suspension or a revocation of driving privileges.

*Id.* at 2. The People then "defer[red] to the Court and its interpretation of 607(b) alone to impose sentence." *Id.* Rohn, however, argues that "the irreconcilable conflict . . . creates an ambiguity concerning which statute applies, and in light of the rule of lenity, the Court must proceed under Section 607 with its discretionary probationary provisions." (Def. Br. 5.)

■ "Ambiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses." 2A NORMAN J. SINGER & J.D. SHAMBIE SINGER, *Sutherland Statutory Construction* § 45:2 (2007). *Accord Ladner v. United States*, 358 U.S. 169, 177-78, 79 S. Ct. 209, 3 L. Ed. 2d 199 (1958). As the statutes in question here are penal, any ambiguities must be resolved in favor of the criminal defendant. *Gilbert v. People of the V.I.*, 52 V.I. 350, 356 (V.I. Sup. Ct. 2009) (citing *Gov't of the V.I. v. Knight*, 989 F.2d 619 (3d Cir. 1993)). This is known as the rule of lenity and "applies not only to substantive criminal prohibitions, but also to the penalties they impose." *Knight,*

106

989 F.2d at 633 (citations omitted). "[T]he 'touchstone' of the rule of lenity 'is statutory ambiguity.' " *Moskal v. United States*, 498 U.S. 103, 107, 111 S. Ct. 461, 112 L. Ed. 2d 449 (1990) (quoting *Bifulco v. United States*, 447 U.S. 381, 387, 100 S. Ct. 2247, 65 L. Ed. 2d 205 (1980)). Before the Court may invoke the rule of lenity, it first "must conclude that there is a grievous ambiguity or uncertainty in the statute." *Muscarello v. United States*, 524 U.S. 125, 138-39, 118 S. Ct. 1911, 141 L. Ed. 2d 111 (1998) (citation and internal quotations omitted). "When . . . a statute is ambiguous in terms or because of doubtful language it would seem to have two meanings, courts are called upon to construe it by finding which meaning reflects the intention of the Legislature that enacted it." *Braffith v. People of the V.I.*, 26 F.2d 646, 648 (3d Cir. 1928). However, more than a possibility of a narrower construction is necessary to create ambiguity. *Moskal*, 447 U.S. at 108. Lenity is limited to "situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to 'the language and structure, legislative history, and motivating policies' of the statute." *Id.* (emphasis in original) (quoting *Bifulco v. United States*, 447 U.S. 381, 387, 100 S. Ct. 2247, 65 L. Ed. 2d 205 (1980)).

■ All "statutory interpretation begins with the language of the statute itself." *Knight*, 989 F.2d at 633 (citing *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 557-58, 110 S. Ct. 2126, 109 L. Ed. 2d 588 (1990)). Literal interpretation of statutes is strongly favored. *Murrell v. People of the V.I.*, 54 V.I. 338, 352-53 (V.I. Sup. Ct. 2010). Thus, "the plain meaning of the words ordinarily is regarded as conclusive." *Knight*, 989 F.2d at 633 (citation omitted). "The plain meaning rule, however, is not absolute. A court may consider persuasive legislative history that [the Legislature] did not intend the words they selected to be accorded their common meaning. [But a] construction inconsistent with a statute's plain meaning . . . is justifiable only when clear indications of a contrary legislative intent exist." *Id.* (citations omitted). As with any legislative body, the Legislature of the Virgin Islands "is presumed to enact legislation with knowledge of the law." *Murrell*, 54 V.I. at 352-53. Thus, legislative intent prevails over literal interpretation only when a literal reading yields a result contrary to the statute's objective. *Gilbert*, 52 V.I. 350, 536 (citation omitted). If the Legislature manifested its intentions clearly, the Superior Court may not manufacture ambiguity in order to

defeat that intent. *Bifulco v. United States*, 447 U.S. 381, 387, 100 S. Ct. 2247, 65 L. Ed. 2d 205 (1980).

The Legislature passed the "Virgin Islands Controlled Substances Law" in 1971. V.I. CODE ANN. tit. 19 § 591 (1995). The legislation was intended "to provide a comprehensive drug abuse and control law and to strengthen existing law enforcement authority in the field of drug abuse." Act No. 2961, 1971 V.I. Sess. Laws 28 (capitalization omitted). The Legislature determined that the improper use of and illegal importation, manufacture, distribution, and possession of certain naturally-occurring as well as man-made chemical substances have a substantial and detrimental effect on the health and welfare of the people of the Virgin Islands. V.I. CODE ANN. tit. 19 § 592 (1995). Accordingly, the Legislature identified the substances to be controlled and prohibited or restricted their usage and possession. *Id.* § 595 (1995 & Supp. 2010). All controlled substances are listed on five schedules, classified in part according to accepted medicinal use, if any, as well as potential for dependency if abused. *Id.* §§ 591, 595(c). The Virgin Islands Commissioner of Health is empowered to add to or remove from any schedule. *See generally id.* § 594. Before any substance may be listed or delisted as a controlled substance, however, the Commissioner must "issue an order which shall be published once a week for three consecutive weeks in all Virgin Islands newspapers of general circulation." *Id.* § 594(c).

Substances listed on Schedule I have a high potential for abuse and no currently-accepted medical use throughout the United States. *Id.* § 595(b)(1)(A)-(B). Substances like heroin, peyote, and lysergic acid diethylamide are among those included on Schedule I due to their abuse potential and lack of medical use. *Id.* § 595(c) & Sch. I (c)(10). Substances listed on Schedule V have a low potential for abuse and are used routinely in medical treatment. *Id.* § 595(b)(1)(A)-(B). For example, a diluted solution of two hundred milligrams of codeine or less is included on Schedule V because of the low potential for abuse and routine medicinal use. *Id.* § 595(c) & Sch. V(1).

Here Rohn was charged with possession of a controlled substance, marijuana, with intent to distribute. Marijuana has been classified as a controlled substance and listed on Schedule I since enactment of the Controlled Substances Law in 1971. *See* 1971 V.I. Sess. Laws 37. Marijuana is not a narcotic drug, however. *See id.* § 593(19) (defining narcotic drugs as opium, coca leaves, opiates, and related derivatives).

Therefore, manufacturing, distributing, or dispensing marijuana, or possessing marijuana with intent to manufacture, distribute, or dispense, carries a maximum penalty of five years imprisonment, a fifteen-thousand dollar fine, or both. V.I. CODE ANN. tit. 19 § 604(b)(1)(B) (1995 & Supp. 2010). Rohn agreed to plead guilty to the lesser-included offense of simple possession of a controlled substance, which carries a maximum penalty of one-year imprisonment, a five-thousand dollar fine, or both. *Id.* §§ 604(b)(4) & 607(a) (1995 & Supp 2010). As this is Rohn's first offense for simple possession, the People also recommended that the Court place Rohn on probation pursuant to Section 607(b) of Title 19 of the Virgin Islands Code. (Plea Agmt. ¶ 3.)

Section 607(b) implements a separate probation procedure[2] for first-time offenders convicted of, or pleading guilty to, simple possession of a controlled substance. Section 607(b) authorizes courts to, "without entering a judgment of guilty and with the consent of such person, defer further proceedings and place [the defendant] on probation upon such reasonable conditions as it may require and for such period, not to exceed one year, as the court may proscribe." *Id.* § 607(b)(1) (1995 & Supp. 2010). Discharge and dismissal from probation "may occur only once with respect to any person." *Id.* Successful completion of probation entitles the defendant to dismissal of criminal proceedings without court adjudication of guilt. *Id.* Discharge from probation and dismissal of the criminal proceedings may not be "deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime . . . or for any other purpose." *Id.*

In addition to the penalties imposed by Section 607(a) or probation as provided by Section 607(b), "[a]ny person who pleads guilty to, or is convicted of, possession of a controlled substance . . . *shall . . . have [her] driver's license or driving privileges revoked* for a period of two

---

[2] Placement on probation pursuant to Section 607(b) is similar to placement on probation pursuant to Section 3711(c) of Title 5 of the Virgin Islands Code. *See* V.I. CODE ANN. tit. 5 § 3711(c) (1997 & Supp. 2010). Under both provisions, successful fulfillment of the terms of probation entitles the criminal defendant to discharge "without court adjudication of guilt." *Id.* V.I. CODE ANN. tit. 19 § 607(b)(1) (1995 & Supp. 2010). Similarly, violation of the terms of probation authorizes the court to enter an adjudication of guilt and impose sentence. Probation differs in that Section 607(b) grants courts discretion to discharge defendants from probation before expiration of the period proscribed. In addition, Section 607(b) limits the length of probation to one-year whereas Section 3711(c) is without a stated limit.

years . . . ." V.I. CODE ANN. tit. 20 § 378 (1995 & Supp. 2010) (emphasis added). Both the People and Rohn found ambiguity in the juxtaposition of Section 607 with Section 378, despite the clarity of the text of both statutes. Rohn and the People interpret Section 378 as a further criminal proceeding that Section 607(b) would defer for defendants placed on probation. (*See* Def. Br. 2 ("The issue is whether the court could exercise its discretion to defer further proceedings pursuant to Section 607 and the parties' Plea Agreement, or whether it must instead revoke Rohn's driving privileges for a period of two years pursuant to Section 378.").) Upon consideration of the overall scope and application of Section 378, including the statute's history, placement, title, and text, the Court finds that driver's license revocations pursuant to Section 378 is a civil, and not criminal, penalty.

The Legislature of the U.S. Virgin Islands enacted Section 378 "to provide for revocation of driver's license for narcotics conviction. . ." Act No. 5649, 1990 V.I. Sess. Laws 397 (capitalizations omitted). *See also id.* at 439-40. As explained further below, Section 378 was enacted as part of a nationwide attempt at curbing illegal drug use. Section 378 was adopted in tandem with related legislation aimed "to provide for liability for drug-induced deaths, to provide penalties for employing juveniles in the distribution of drugs . . . [and] to provide for enhanced penalties for operating controlled substance production facilities. . . ." *Id.* (capitalizations omitted). The Legislature placed Section 378 within Title 20: Highways and Motor Vehicles, and then situated it within Chapter 35: Operators' Licenses. What's more, the Legislature titled Section 378 "Drug offenses; license revocation." That same chapter also lists qualifications and requirements for obtaining driver's licenses. *See, e.g.,* V.I. CODE ANN. tit. 20, §§ 373-375 (1995 & Supp. 2010). *See also, e.g., Gilbert,* 52 V.I. 350, 356 (giving consideration to legislative labeling of statutes). *But cf.* V.I. CODE ANN. tit. 1, § 45(a) (1995). Additionally, the Legislature enacted Section 378 nineteen years after the Controlled Substances Law, including Section 607(b), had already been in force. Thus, this Court must assume that the Legislature enacted Section 378 with knowledge of Section 607(b). A review of the text of Section 607(b) also supports that conclusion.

■ Section 378 applies to "*any person* who pleads guilty to . . . possession of a controlled substance . . . ." V.I. CODE ANN tit. 20, § 378(a) (1995 & Supp. 2010) (emphasis added). The language is clear and

110

unambiguous. All simple possession offenses, including first-time offenses, require *"in addition to any and all other penalties* provided by law" revocation of driver's licenses for a period of two years. *Id.* (emphasis added). Moreover, the Legislature specifically included the phrases "pleads guilty to" and "is convicted of" within the statute. Had the Legislature intended that Section 378 be deferred as a "further proceeding," as Rohn argues, the Legislature could have conditioned revocation of driver's licenses on the court entering a judgment of guilt pursuant to Section 607. Phrased that way, Section 378 would never apply to defendants placed on probation under Section 607(b) because successful completion of probation avoids entry of judgment. Instead, the Legislature drafted Section 378 to apply upon plea of guilt or conviction of guilt. What's more, the Legislature did carve out an exception in enacting Section 378. Instead of a five-year driver's license revocation as with all other controlled substance offenses, simple possession carries only a two-year license revocation. *Id.* § 378(b).

■ Section 378's civil scope also stands out when juxtaposed with license revocations for offenses involving driving under the influence of drugs or alcohol. *See generally* V.I. CODE ANN. tit. 20, § 493 (1995 & Supp. 2010). In criminalizing driving under the influence, the Legislature required within the penal statute itself that courts revoke driver's licenses as part of the overall criminal penalty. *Id.* § 493(c) (six-month license revocation for first-offense). Section 493, for example, requires that *"the court shall* suspend or revoke, for a period of six months" the defendant's driver's license. *Id.* § 493(c)(1) (emphasis added). Section 378, however, contains no such language. In fact, Section 378 operates independently of the courts. The statute requires only that "Judges . . . *take possession* of any driver's license . . . *and forthwith forward* same to the Director of Motor Vehicles."[3] *Id.* § 378(c) (emphasis added). Courts do not revoke

---

[3] In 2005, the Legislature amended the Virgin Islands Code to substitute "Director of Motor Vehicles" for "Commissioner of Police." *See generally* Act No. 6761, 2005 V.I. Sess. Laws 245. The publishers of the Virgin Islands Code Annotated reflected that amendment for all sections within Chapter 35 except Section 378. Nevertheless, the Court quoted above Section 378(c) as it should read. *See id.* at 247 ("Title 20 Virgin Islands Code, chapter 31, section 301, chapters 33, 35, 37, 41, 45, and 39, section 435(a) are amended by striking "Police Commissioner" . . . *in each instance* . . . and by inserting in their stead: "Director of Motor Vehicles . . . .") (emphasis added).

driver's licenses pursuant to Section 378 and therefore lack discretion to waive the revocation.

■ When read together, Section 607 and Section 378 do not create an either/or sentencing schema. Instead, each applies independently of the other. Neither statute is ambiguous when read separately or when read together. Section 607 criminalizes an act and defines punishment for violating that act. Section 607 also grants courts discretion, when sentencing first-time offenders, to defer further proceedings so that the defendant can serve a term of probation. Section 378 is not a further criminal proceeding, however. The background, scope, and text indicate that Section 378 is a civil penalty applicable independently from criminal penalties imposed by Section 607. Accordingly, the Court finds no ambiguity in the application of either statute.

## III. STATUTORY INTERPRETATION

Rohn proffers additional interpretations of Section 607 and Section 378 according to which the Court could give effect to both statutes. Having already found both statutes independently enforceable, however, the Court will address briefly here Rohn's additional statutory interpretation arguments.

■ Rohn asserts that because the Legislature subsequently amended Section 607 after enacting Section 378, "Section 607, as the more recently amended and reenacted statute, must govern." (Def. Br. 7.) The Court finds no merit to this argument. The Legislature has amended Section 607 twice since Section 378 was enacted. For example, in 2001, the Legislature imposed an administrative fee for probationary services for defendants sentenced to probation under Section 607(b). Act No. 6463, 2001 V.I. Sess. Laws 275, *codified at* V.I. CODE ANN. tit. 19, § 607(c) (1995 & Supp. 2010). Then, in 2005, the Legislature criminalized the manufacture, sale, distribution or possession of "designer drugs." Act. No. 6730, 2005 V.I. Sess. Laws 108-09, *codified in part at* V.I. CODE ANN. tit. 19, § 593(10) (1995 & Supp. 2010). Section 607 was amended to include references to "designer drugs." Neither amendment reduced the scope of Section 607 or altered its penalties. Rohn's argument that simply by amending Section 607(b) the Legislature mooted application of Section 378 lacks merit Moreover, the Court is unaware of any canon of statutory interpretation that would permit courts to interpret statutory amendment as an implied prioritization of one statute over another.

112

■ Next, Rohn argues that Section 607, as a specific statute, should govern over Section 378, a more general statute. (Def. Br. 7.) Specifically, Rohn argues that

> Section 607(b)(1)'s provision relates to multiple offenses, which includes a term of imprisonment of not more than two years, and is more consistent with the two year license revocation under section 378, which further supports the proposition that Section 378 should apply to defendants with multiple offenses, but not to first-time offenders such as Rohn.

*Id.* This argument too falls flat, however. Subsequent offenses involving simple possession of a controlled substance carry a maximum penalty of two years in prison, a ten-thousand dollar fine, or both. V.I. CODE ANN. tit. 19 § 607(a) (1995 & Supp. 2010). If Rohn's reading were correct, Section 378's two-year license revocation would apply only to subsequent offenses of simple possession of a controlled substance. As Rohn construes the statute, all first-time offenders, whether sentenced under Section 607(a) or placed on probation under Section 607(b), would avoid mandatory license revocations. If the Legislature intended that result, the Legislature would have legislated that result. Accordingly, the Court finds that Rohn harmonization of Section 607(a)'s two-year sentence with Section 378's two-year license revocation lacks merit.

## IV. CONSTITUTIONAL DUE PROCESS

■ Finally, while Rohn did not expressly challenge the constitutionality of Section 378, the crux of her arguments does. Rohn presents arguments grounded both on substantive and procedural due process.[4] As "due process clearly guarantees all defendants the right to be sentenced under an accurate understanding of the law," the Court will examine Rohn's constitutional challenges below. *United States v. Eakman*, 378 F.3d 294, 302 (3d Cir. 2004) (citation omitted).

---

[4] The protections of the Fourteenth Amendment to the United States Constitution, including the Due Process Clause, are applicable in the U.S. Virgin Islands by operation of Section 3 of the Revised Organic Act of 1954. 48 U.S.C.A. § 1561 (2011). *See also United States v. Liburd*, 607 F.3d 399 (3d Cir. 2010).

### a. Substantive Due Process

Rohn claims that "a two-year revocation of a driver's license is a harsh consequence for a first-time offender who pleads guilty to simple possession of a controlled substance, particularly in light of the discretionary probation contained in Section 607." (Def. Br. 5.) Rohn also attacks license revocations, particularly where, as here, no motor vehicle was involved. *Id.* at 9. In essence, Rohn is arguing Section 378 lacks a rational basis.

█ Obtaining a license to drive is a privilege. *See Bell v. Burson,* 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971) ("relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.' "). Once granted, however, licenses may not be suspended or revoked without due process. *Dixon v. Love,* 431 U.S. 105, 110, 97 S. Ct. 1723, 52 L. Ed. 2d 172 (1977). "[S]uspension of a driver's license for statutorily defined cause implicates a protectible property interest." *Mackey v. Montrym,* 443 U.S. 1, 10, 99 S. Ct. 2612, 61 L. Ed. 2d 321 (1979). Here, Section 378 revokes the driver's licenses of all persons convicted of, or pleading guilty to, simple possession of a controlled substance. As a license revocation statute, Section 378 must satisfy the due process clause. Section 378 will satisfy substantive due process protections only if it is rationally-related to a legitimate government interest. *Thomas v. Gov't of the V.I.,* 49 V.I. 569, 579 (V.I. App. Div. 2007) (quoting *Sunken Treasure, Inc. v. Unidentified Vessel,* 857 F. Supp. 1129, 1137 (D.V.I. 1994)).

Driver's license suspensions for offenses involving controlled substances date back at least three decades. *See generally* Aaron J. Marcus, *Are the Roads a Safer Place Because Drug Offenders Aren't on Them?: An Analysis of Punishing Drug Offenders with License Suspensions,* 13 KAN J.L. & PUB. POL'Y 557, 558-61 (2004) (discussing efforts at federal level to condition state receipt of federal highway funding on enactment of license suspensions as part of strategy on war on drugs). Commonly referred to as "Use and Lose" laws, license suspensions for offenses involving controlled substances "began to appear during the mid-1980s. The basic premise of these laws was that teens highly value obtaining a driver's license and that the threat of losing their license, or delaying when one could be obtained, would deter many from substance abuse." U.S. Dep't of Transp., *Evaluation of Use and Lose*

114

*Laws* 2 (2001), *available at* http://ntl.bts.gov/lib/26000/26000/26032/ DOT-HS-809-285.pdf (last visited April 20, 2011). "In 1994, Congress moved to expand the Use and Lose approach to drug offenses by persons of all ages." *Id.* at 3. Congress conditioned federal highway funding on states enacting and enforcing laws for "the revocation, or suspension for at least 6 months, of the driver's license of *any individual* who is convicted . . . of . . . *any drug offense* . . . ." 23 U.S.C.A. § 159(a)(3) (2010) (emphasis added). States that failed to enact license suspension laws — or certify their opposition — forfeited federal highway funding. *Id.* § 159(b)(4).

To date, at least seventeen States,[5] the District of Columbia,[6] and two United States Territories[7] mandate suspension of driver's licenses in all offenses involving controlled substances, regardless whether motor vehicles were involved. Moreover, twelve states have upheld "Use and Lose" laws despite challenges alleging violations of substantive due process, procedural due process, equal protection, double jeopardy, and cruel and unusual punishment.[8] Where violations of substantive due

---

[5] ALA. CODE § 13A-12-290 (West 2010) (six-month suspension); ARK. CODE ANN. § 27-16-915 (West 2011) (six-month suspension); DEL. CODE ANN. tit. 21, § 4177K(a) (West 2011) (two-year suspension); FLA. STAT. ANN. § 322.055 (1) (West 2011) (two-year suspension unless shortened through completion of drug rehabilitation program); GA. CODE ANN. § 40-5-75 (West 2010) (six-month suspension upon first offense); IOWA CODE ANN. § 901.5(10) (West 2010) (six-month revocation); MASS. GEN. LAWS ANN. ch. 90, § 22(f) (West 2010) (up to five-year suspension); MISS. CODE ANN. § 63-1-71 (West. 2010) (six-month suspension); N.J. STAT. ANN. § 2C:35-16 (West. 2011) (six-month to two-year suspension range); N.Y. VEH. & TRAF. LAW § 510(2)(b)(v) (McKinney 2010) (six-month suspension); OHIO REV. CODE ANN. § 2925.11(E)(2) (West 2011) (six-month to five-year suspension range); OKLA. STAT. ANN. tit. 47, § 6-205.1(B)(1) (West 2010) (six-month suspension); 75 PA. CONS. STAT. ANN. § 1532(c) (West 2010) (six-month to two-year suspension range); S.C. CODE ANN. § 56-1-745 (2010) (six-month suspension); TEX. TRANSP. CODE ANN. § 521.372 (West 2009) (six-month suspension); VA. CODE ANN. § 18.2-259.1 (West 2011) (six-month suspension); WIS. STAT. ANN. § 961.50 (West 2011) (six-month to five-year suspension range).

[6] D.C. CODE § 50-1403.02 (2011) (six-month to two-year suspension range).

[7] P.R. LAWS ANN. tit. 24, § 2516 (2010) (six-month to five-year suspension range); V.I. CODE ANN. tit. 20, § 378 (1995) (two-year to five-year revocation range).

[8] *Walton v. Commonwealth*, 255 Va. 422, 497 S.E.2d 869 (1998) (substantive due process); *State v. Bell*, 572 N.W.2d 910 (Iowa 1997) (substantive due process and equal protection); *State v. Thompkins*, 75 Ohio St. 3d 558, 1996 Ohio 264, 664 N.E.2d 926 (1996) (substantive due process and equal protection); *Mitchell v. State*, 659 N.E.2d 112 (Ind. 1995) (procedural and substantive due process); *People v. Zinn*, 843 P.2d 1351 (Colo. 1993) (substantive due

---

process were alleged, courts upheld license revocations as being rationally-related to legitimate government purposes. *See, e.g., State v. Bell*, 572 N.W.2d 910, 912 (Iowa 1997) ("The legislature may have concluded that individuals convicted of drug offenses are more likely to cause dangerous conditions on public roads [T]he legislature may have believed that the statute would cut down on the transportation and trafficking of drugs . . . ."); *State v. Thompkins*, 75 Ohio St. 3d 558, 1996 Ohio 264, 664 N.E.2d 926, 929 (1996) ("[Legislative] goals include the desire to keep the highways clear of people who have demonstrated a willingness to abandon their physical and mental acuity to drugs, the desire to inhibit the ability to buy, sell, transport or use controlled substances . . ."); *Mitchell v. State*, 659 N.E.2d 112, 116 (Ind. 1995) ("the General Assembly may have concluded that denying the privilege of driving and the privilege of using the public roads to those likely to deal in controlled substances . . . is an effective means for deterring criminal conduct."); *Quiller v. Bowman*, 262 Ga. 769, 425 S.E.2d 641, 643 (1993) ("The legislature could reasonably assume that a person who possesses illegal drugs will use the drugs, that a drug user will drive while under the influence of drugs, and that drug use impairs a driver's judgment."); *Rushworth v. Registrar of Motor Vehicles*, 413 Mass. 265, 596 N.E.2d 340, 340 (1992) ("The Legislature could have concluded that the unlawful sale and use of drugs constitutes a serious problem . . . and that license suspensions . . . could serve as a deterrent to illegal drug distribution and use, and as a means of rehabilitation.").

Rohn highlights that no motor vehicle was involved here. She claims, therefore, that "[m]andatory revocation of a license for a misdemeanor

process); *Quiller v. Bowman*, 262 Ga. 769, 425 S.E.2d 641 (1993) (substantive due process and equal protection); *Lite v. State*, 617 So.2d 1058 (Fla. 1993) (substantive due process and equal protection); *Plowman v. Commonwealth*, 635 A.2d 124 (Pa. 1993) (substantive due process and cruel and unusual punishment); *Rushworth v. Registrar of Motor Vehicles*, 413 Mass. 265, 596 N.E.2d 340 (1992) (substantive due process, equal protection, and double jeopardy); *State v. Smith*, 58 N.J. 202, 276 A.2d 369 (1971) (substantive due process and equal protection); *State v. Wolfe*, 537 N.W.2d 435, 193 Wis. 2d 641 (1995) (substantive due process); *R.T.M. v. State*, 677 So.2d 801 (Ala Ct. Crim. App. 1995) (equal protection and double jeopardy) (citation to denial of certiorari unavailable). *But see, e.g.*, IND. CODE ANN. § 35-48-4-15 (West 2011) (six-month to two-year suspension range enforceable now only when operation of operation involved); MASS. GEN. LAWS ANN. ch. 94C, § 32L (West 2010) (license suspension and other criminal penalties prohibited for possession of one ounce or less of marijuana).

guilty plea to possession of a controlled substance which in no way relates to the operation of a motor vehicle is absurd in that it imposes a more severe sanction than the punishment for a conviction or plea related to an offense of driving while intoxicated." (Def. Br. 9.) Yet Rohn overlooks that her case may actually underscore the Legislature's interest in revoking driver's licenses for offenses involving controlled substances. Rohn was not discovered in possession of marijuana while relaxing in the privacy of her home. Rather, she was at the airport "taking the marijuana to her boyfriend in Puerto Rico, who's [sic] father was dying and needed something to help him get through it." (Plea Agmt. ¶ 2.) Rohn did attempt to transport marijuana between two United States Territories: St. Croix and Puerto Rico. Furthermore, even though Rohn was not discovered in possession of marijuana while operating a motor vehicle, she did have to transport the marijuana by motor vehicle to the airport. As in *Bell*, *Mitchell*, and *Rushworth*, this Court also finds that our Legislature may have believed that individuals in possession of controlled substances may attempt to distribute them. Revoking driver's licenses of individuals who choose to possess controlled substances is one method of reducing the movement of controlled substances throughout our Territory. Section 378 is rationally-related to that legitimate government goal.

In addition to reducing the movement of controlled substances, revoking driver's licenses may also reduce the number of impaired drivers on our roads. As in *Mitchell* and *Quiller*, this Court also finds that our Legislature could have determined that possession of a controlled substance may lead to use of that controlled substance and that users may later attempt to operate motor vehicles. Moreover, the Legislature may also have taken into account the driving and weather conditions here in the Territory. Public transportation is limited. Many residents drive. Traffic can be heavy. Roads and highways can be steep or winding. From time to time, brush or shrubbery may reduce visibility around sharp corners or bends. Six months out of every year hurricanes and tropical storms threaten our islands. Rainfall often comes in intense bursts. Floodwaters can peak very rapidly and the soil cannot always absorb the rainwater fast enough. Flash-flooding can occur within minutes during an intense storm. Motorist must be ever vigilant to all of these conditions when driving on our roads. The Legislature could have enacted Section 378 in order to prevent persons involved in controlled substances from driving, and thus threatening the safety of our drivers.

■ Based on the discussion above, the Court finds that Section 378 is rationally-related to the legitimate government interests in restricting the transportation of controlled substances and reducing the number of impaired drivers on our roads. Section 378 comports with substantive due process and is, therefore, constitutional.

### b. Procedural Due Process

■ Lastly, Rohn challenges the procedure for license revocations, claiming that "the public is not given fair warning about the legal consequences of pleading guilty to possession of a controlled substance. Both [Section 607 and Section 378] address the same plea but contain very different results." (Def. Br. 4.) Rohn's argument challenges the procedural due process accorded by Section 378. Three factors are weighed in evaluating the procedural due process afforded by a statute: (1) the private interest; (2) the risk of erroneous deprivation from the procedures in place and any probable value of alternative procedural safeguards; and (3) the government's interest. *Mackey*, 443 U.S. at 10 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

■ "The first step in the balancing process . . . is identification of the nature and weight of the private interest affected by the official action challenged." *Id.* at 11. "Once licenses are issued . . . their continued possession may become essential in the pursuit of a livelihood." *Bell*, 402 U.S. at 539. "In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." *Id.* Here Rohn expressed her interest in retaining her license, noting that "[o]perating a motor vehicle is an integral part of her career and livelihood. . . . Rohn employs some thirty employees, all of who [sic] would lose their employment should Rohn be unable to work, and some of whom would lose their employment if Rohn had to restrict her ability to work." (Def. Br. 5.) Therefore, the Court finds that the private interest at stake is Rohn's ability to retain her license to operate a motor vehicle.

The second factor examines "the likelihood of an erroneous deprivation of the private interest involved as a consequence of the procedures used." In this case, Rohn elected to resolve the charge against her by entering into a plea agreement. While the People recommended treatment as a first-time offender and placement on probation pursuant to Section 607(b)(1), the People also noted that sentencing was entirely

118

within the Court's discretion. During the change of plea hearing, the Court advised Rohn of the consequences of pleading guilty to Section 607(a) and its concomitant penalties. When Rohn expressed surprise at the mandatory license revocation, the Court granted the parties time to argue the question now before the Court. (*See* Order, entered Dec. 14, 2010.) *Accord Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S. Ct. 1983, 32 L. Ed. 2d 556, (1972) (quoting *Baldwin v. Hale*, 68 U.S. (1 Wall.) 223, 233, 17 L. Ed. 531 (1864)) ("For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' "). Rohn's license was not suspended at the change of plea hearing. Therefore, the Court finds zero likelihood of erroneous deprivation of Rohn's driver's licenses, particularly because Rohn retained her license to drive pending resolution of this matter.

Lastly, the third factor identifies the governmental interest involved. *Mackey*, 443 U.S. at 17. The Legislature classified certain substances as controlled substances and then criminalized their possession. Subsequently, the Legislature imposed a driver's license revocation for persons convicted of, or pleading guilty to, simple possession of a controlled substance. As discussed above, the Court finds that the government interest here is the restriction in movement of controlled substances and the safety of the roads and highways of the Territory.

A balancing of the three factors yields the conclusion that the license suspension procedure comports with procedural due process. Rohn's license to drive is a property interest of which she cannot be deprived without due process of law. Government interest here is motorist safety and restriction of controlled substances. There is no risk of erroneous deprivation of a driver's license under Section 378. Rohn's claim that she and the public lack fair warning of the consequences of pleading guilty to Section 607(a) is unpersuasive. First, ignorance of the law provides no defense, particularly when the defendant is an officer of the court. Second, Section 378 is triggered only upon a conviction of, or plea of guilty to, Section 607(a). Third, the plain language of Section 378 states that "any person" convicted or pleading guilty to Section 607(a) shall have their license revoked. As with any statute, Section 378 is enforceable unless and until it is amended, repealed, or struck down by a court of law. Accordingly, the Court finds that Section 378 satisfies procedural due process.

119

## V. CONCLUSION

■■■ Based on the discussion above, the Court finds that Section 378 of Title 20 of the Virgin Islands Code "was not a slip of the legislative pen, nor the result of inartful draftsmanship, but was a conscious and not irrational legislative choice." *Bifulco*, 447 U.S. at 400. Any person who pleads guilty to or is convicted of simple possession of a controlled substance must have their license to drive revoked for two-years. Section 378 is unambiguous and comports with substantive and procedural due process requirements.